### Spoor and others *vs.* Wells.

Where the husband had a contract for the purchase of land upon, which he made a mere nominal payment, and he afterwards died without leaving any means of paying for such lands, leaving a wife and several infant children surviving him, and the wife subsequently paid for the land and took a deed thereof in her own name, and afterwards conveyed the same with warranty; and her children after they became of age waited from nine to fifteen years, and until their mother had become insolvent, before they attempted to assert their claim, in equity, to the land; *Held*, that their bill was properly dismissed by the vice chancellor on account of their delay in instituting the suit.

An equitable claim, upon which a bill in chancery could have been filed previous to the first of January, 1830, and where the complainant was under no legal disability, is barred, by the provisions of the revised statutes, at the expiration of ten years after the revised statutes went into operation.

The old statute of limitations is only applicable to suits in equity for claims as to which the right to sue existed previous to January, 1830, where there is a concurrent jurisdiction, at law and in equity, in reference to the subject of the suit; but it does not apply to cases which are exclusively of equitable cognizance.

This was an appeal from a decree of the vice chancellor of the eighth circuit, dismissing the bill of the complainants, under the following circumstances.

In May, 1808, Theodore Sedgwick contracted with Derick Spoor to convey to him a lot of land in the county of Ontario, for the price or consideration of $200. Which sum Spoor covenanted to pay as follows: $100 on the first of January, 1809, $50 on the first of January, 1810, and $50 on the first of January, 1811, with interest on the whole annually from the 12th of September, 1807. It was also stipulated in the contract that if Spoor should fail in the performance of any of his covenants to make the payments, Sedgwick should be discharged from his covenants to make the conveyance. Spoor paid $3 upon the contract at the time it was made, and being then in possession of a squatter's right, he continued in possession until the time of his death, on the first of November, 1810; making some slight improvements upon the lot, but without paying any thing beyond the $3, either for principal or interest on the contract. At the time of his death Derick

Spoor left a widow and three children surviving him; the eldest of which children, A. Spoor, was about five or six years of age, and the youngest, Gerrit Spoor, was but a few weeks old. Derick Spoor left some personal property at the time of his death, worth from $150 to $200, including a span of horses which he had bought partly in exchange for a yoke of oxen, either lent to him by his father-in-law, or purchased of the latter and not paid for. Without taking out administration on the estate of the decedent, the father of the widow disposed of the personal property, and paid the small amount of debts which his son-in-law owed. And after the death of her father which took place in 1811, the widow, with the proceeds of this personal estate and with about $200 which came to her from her father's estate, paid the amount due on the contract, partly in 1812 and partly in 1814; and then took a deed for the 40 acres of land in her own name, in the month of January, 1814.

The widow of Derick Spoor, in 1815, intermarried with J. Russell, but she and her husband continued to reside on the forty acre lot, and to support the three children of her first husband, until the fall of 1819, when Russell died. In the meantime she and her husband had mortgaged the lot to the defendant, for $250. In January, 1821, she sold and conveyed the lot to the defendant, for the consideration of $600, including the amount due upon the mortgage, with covenants of seisin and warranty; that being the full value of the lot, including the improvements made thereon both before and after the death of Derick Spoor. The notes of the defendant were taken for the balance of the purchase money, and were turned out by Mrs. Russell towards the purchase of another lot of 30 acres, for which she paid $360 and took a deed in the names of her son Garret Spoor and of Chauncey Hinman, the husband of her daughter.

Her oldest son, Abraham Spoor, arrived at the age of twenty-one in 1825 or 1826, and died a few weeks before the filing of the bill in this cause in June, 1840, without having instituted any proceedings against the defendant, or otherwise, in relation to the lot; leaving Cecilia Spoor one of the complainants, an

infant, who was six weeks old at the time of the commence-
ment of this suit, his only child and heir. Mrs. Hinman, the
daughter of Derick Spoor, became of age in 1828 or 1829, and
Garret Spoor in 1831.

*V. Matthews & J. C. Morse,* for the appellants.

*Walter Hubbell,* for the respondent.

THE CHANCELLOR. There is no evidence in this case
showing how the three Sedgwicks, who gave the conveyance
to Mrs. Spoor in 1814, were connected with Theodore Sedg-
wick, sen. who made the contract. But as their agent received
the money on that contract, and executed the deed as their
attorney, it may be fairly inferred that they had acquired the
interest of T. Sedgwick, sen. in the land, as his grantees, devi-
sees, or heirs; and were willing to ratify the contract, although
they probably were not bound to do so, under its provisions. I
think, therefore, that if the contract had actually been fulfilled
for the benefit of the children, by a payment out of their funds,
or by a donation from their mother for their use, they would,
in equity, have been entitled to the lot; if they had asserted
their claim within a reasonable time, and had not in fact re-
ceived an equivalent therefor. But as their mother conveyed
the property to Wells for a full consideration, with covenants
of warranty and seisin, if they had no equitable claim as
against the mother, it would be inequitable and unjust to per-
mit them to recover the land from the defendant; and thus
charge her with the value thereof through her covenants to the
defendant.

Taking the facts as they appear, it is very evident that the
mother has really paid the whole consideration for the land,
either directly or indirectly; and that the complainants have
no equitable claim against her on account of the sale thereof.
As she has conveyed with warranty, and has received the pro-
ceeds of the land, and has invested a portion of the proceeds in

other lands, for the benefit of two of her children, she and the lands conveyed to them should be first charged, before resort is had to the lands in possession of the defendant, to satisfy any claim the complainants may have on account of the Sedgwick contract. For the interest of the children in the 40 acre lot was a mere equitable right.

The father, it is true, left a very small personal property, some part of the proceeds of which may have been applied on the contract; but the whole could not have exceeded $125, after paying the small debts and satisfying the claim of the estate of his father-in-law on account of the oxen. And the expense of supporting the three children until they were old enough to earn their livelihood, undoubtedly must have far exceeded that amount and their proportion of the use of the land. The annual value of the land, according to the testimony, exclusive of taxes, &c. could not have exceeded $20. I am satisfied, therefore, that if an account had been taken between Mrs. Spoor and her children, in January, 1821, charging her with the value of the land and the fair rent thereof from the death of her husband, and crediting her with the purchase money of the 30 acres, which she bought with the proceeds of the 40 acre lot, and what she had paid out of her own money and earnings on the Sedgwick contract, there must have been a very considerable balance equitably due to her.

If the children had asserted their claims to this land, therefore, when they first became of age, although they might have had a technical right to an adjustment of their claim upon surrendering the 30 acre lot and accounting for their support and maintenance during their tender years, their right to relief would have been merely nominal. But as one of them had waited about fourteen or fifteen years, after he was of age and in a situation to assert his right, and the others had delayed asserting their claims from nine to twelve years after they were of age, and until their mother had probably become irresponsible, I think the vice chancellor was right in dismissing the bill on account of the staleness of the claim. Had they brought the suit and recovered the land from the defendant while the

Spoor *v.* Wells.

last husband was living, the defendant would have recovered back the consideration of the land with interest and the costs of his defence in a suit against him and his wife. Indeed, if the statute of limitations had been insisted on, in relation to the claim made by this bill in behalf of the daughter of A. Spoor, it is clear that her claim would have been barred by the provisions of the revised statutes. For this being a claim of equitable cognizance merely, the remedy was barred at the expiration of ten years after the revised statutes went into effect; as to Abraham Spoor who was then of age and under no legal disability. And I believe all this appears upon the face of the bill. The old statute of limitations is only applicable to rights of action accrued previous to the first of January, 1830, where there is concurrent jurisdiction at law and in equity. But where the court of equity has exclusive jurisdiction, the provisions of the revised statutes, relative to the time for commencing suits in equity which are not cognizable at law, apply. When no legal disability exists, the suit must be brought within ten years after the right to sue occurs, where the proceeding is to enforce a trust not cognizable in the courts of common law. (2 *R. S.* 301, § 52.) And where the right to sue existed previous to the time when the revised statutes went into operation, the suit, to enforce the performance of the trust, must be brought before the first of January, 1840, or the right is gone; unless the complainant was under some legal disability during the ten years, or some part of that time.

The decree appealed from in this case must be affirmed, with costs.