CLEVELAND & P. R. CO. (EVANS v.). See Case No. 4,557.

CLEVELAND CO-OPERATIVE STOVE CO. (HENDERSON v.). See Case No. 6,351.

CLEVELAND, C. & C. R. CO. (TOPPAN v.). See Case No. 14,099.

CLEVELAND INS. CO. (GLOBE INS. CO. v.). See Case No. 5,486.

## Case No. 2,889.

### CLEVELAND INS. CO. v. REED et al.

[1 Biss. 180; [1] 6 Am. Law Reg. 406.]

District Court, D. Wisconsin. Sept. Term, 1857.

ATTORNEY CANNOT ACQUIRE TITLE AS AGAINST PRINCIPAL—FORECLOSURE SUIT—HOW BARRED—SUBSEQUENT MORTGAGEE NOT MADE PARTY—COMMON LAW LIMITATIONS REGARDED IN EQUITY.

1. Where an agent, by virtue of a power of attorney, conveys the property of his principal and takes a conveyance to himself, and then mortgages it, such use of the power of attorney would not give him the title as against his principal.

2. Though the principal might have repudiated the acts of his attorney, a purchaser under decrees of foreclosure of prior mortgages, being a stranger to the transaction, cannot object to the validity of the mortgage; but he can inquire into its true consideration.

3. Usury must be specially pleaded or specifically set forth in the record, and supported by evidence, or the court will not inquire into it.

4. The statutory limitation of ten years should be applied to a bill to foreclose filed seventeen years after the mortgage debt was due, the mortgagee having notice that the land had been sold under prior mortgages, and for taxes, and that the purchaser was in possession, claiming title. This is true, although the statute was passed subsequent to the maturity of the mortgage debt.

5. Without such a statute equity would not disturb the possession or title of such a purchaser, he having been in possession fifteen years to the knowledge of the mortgagee. There must be conscience, good faith, and reasonable diligence, to call into action the powers of a court of equity.

6. Nor will the fact that the mortgagee was not made a party to the bills foreclosing the prior mortgages, under the circumstances of this case, enable the bill to be sustained.

7. Cases under the statute of limitations cited and commented upon.

8. Statutes for foreclosure and redemption are rules of property, and also laws of limitation;

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

and in the absence of laws limiting proceedings in equity, the limitations as to similar demands at common law are considered as proper rules to be observed in courts of chancery.

[In equity. Bill by the Cleveland Insurance Company against George Reed, Juliet S. Reed, James H. Rogers, and the Milwaukee & Mississippi Railroad Company.]

. Butler & Buttrick, for complainant.

James S. Brown and Waldo & Ody, for defendants.

MILLER, District Judge. This is a bill filed in February, 1856, against George Reed and wife, James H. Rogers, and the Milwaukee & Mississippi Railroad Company, to foreclose a mortgage for $22.000 executed by George Reed and wife to complainant, dated February 10th, 1837, and recorded in April of the same year, covering certain lots in Finch's addition to Milwaukee, and thirty-six acres of land in the county of Milwaukee.

Reed answers, admitting the execution of the mortgage, and that the same is due and unpaid, and pleads a discharge under the bankrupt law of the United States in December, 1842.

Rogers, in his answer, says that he is the owner in fee simple of the property in Finch's addition, and of which he had been in the full and actual possession as owner for nineteen years; that he has resided in Milwaukee constantly, where he could at all times be found; that he has been in the actual occupation of the land for more than ten years since the right of action on the mortgage accrued, and before the commencement of this suit, and that the right of action is barred by the statute of limitations of this state.

He further says that the property in Finch's addition was and still is the property of Curtis Reed, and that neither George Reed nor the complainant ever had any title to or equitable lien or claim upon it; that George Reed never had any business transactions with complainant, except through Edmund Clark, the president and owner of the controlling interest of the capital stock; that George Reed on the 10th of February, 1837, as the attorney in fact of Curtis Reed, and by virtue of a power of attorney to sell and lease, dated June 23, 1836, conveyed the property by warranty deed to Clark, who at the same time re-conveyed by quit-claim to George Reed for the nominal consideration of $30.000, and then executed these notes and mortgage to complainant; the whole being one transaction, in the absence of and without the knowledge or consent of Curtis Reed, and with intent to defraud him.

Rogers also sets forth that Curtis Reed, prior to the execution of above instruments, gave two mortgages upon these premises to one Nathaniel Finch, which were record-ed prior to the mortgage to complainant, and assigned to him, Rogers, before maturity, and afterwards foreclosed in the territorial district court, and the land was sold to him, and the sale duly confirmed. He also claims title by deed from the assignee of George Reed, and under tax deeds, and insists that the cause of action is stale, and should not be enforced in equity; that it is nowhere stated in the bill that the money claimed to have been loaned was a part of the capital stock of the company, and that the charter of the company gave it no power to deal in real estate, or to loan money other than its corporate funds, for which reason the mortgage is void; that the company has long since ceased to exist; and that the transaction is usurious, and the conveyance and mortgage were a device to avoid the usury laws.

Everything connected with the transaction excludes the idea that the mortgage is upon any land in that section, but Curtis Reed's. The purchase by Rogers of George Reed's interest in the section of land, at his assignee's sale, does not affect this mortgage. George Reed's bankruptcy and the proceedings and sale under it have nothing whatever to do with this case, so far as Rogers is concerned. The return of this debt by George Reed, in the schedule annexed to his petition in bankruptcy, cannot in any way affect the interests or rights of Curtis Reed or Rogers in regard to the mortgage or the mortgaged premises.

This mortgage was a security for money loaned, and the insurance company had authority by its charter to take security for money loaned, as part of its capital.

Clark testifies that the amount paid Reed was entered on the books of the company, as paid by it; that he made the arrangements with Reed after consulting some of the directors; that eleven thousand dollars, part in cash and part in paper was the true sum advanced [and was the true consideration],[2] the other eleven thousand dollars being simply a guaranty. that the mortgaged premises would be worth the amount, when the notes should become payable; that a private note of $3.000 was given by Reed as a penalty to ensure the punctual payment of the notes. The notes were given in Ohio, and were made payable in New York [and the mortgage is on land in Wisconsin].[2]. The pleadings do not authorize the court to inquire into the subject of usury; they are altogether too indefinite and uncertain. Usury must be specially pleaded, and the evidence must sustain the plea. The whole transaction appears to have been a desperate device of George Reed. to make a raise of money, and an unwarrantable scheme of Clark to embarrass a customer. [Rogers pleads in his answer. that the transaction was a violation of the usury laws

---

[2] [From 6 Am. Law. Reg. 406.]

of either the states of Ohio, New York or Wisconsin, and is void. Upon such pleading I shall not examine the subject; nor shall I stop to inquire whether Rogers could plead usury without tendering the amount actually loaned with interest.][2] It is certain that George Reed could not use the power of attorney so as to acquire title adverse to or exclusive of his principal, Curtis Reed. The mortgage is in equity, the mortgage of Curtis Reed, though the notes are at law George Reed's personal obligations.

A power to sell lands, usually includes a power to mortgage, but a mortgage under such a power for a greater sum than is actually loaned may be repudiated by the principal.

Curtis Reed might have required the cancellation of the conveyances and mortgage, at all events upon payment of the sum loaned. But Rogers is a stranger to the transaction, and he cannot make the objection to the validity of the mortgage. He can only cause inquiry to be made of its true consideration, if it is a lien on his land. Jackson ex dem. McCarty v. Van Dalfsen, 5 Johns. 43; Childs v. Digby, 24 Pa. St. [12 Harris] 23.

Rogers became the assignee of the two mortgages of Curtis Reed to the Finches, dated in April, 1836. In pursuance of decrees of the district court for Milwaukee county, at the suit of Rogers against Curtis Reed, Edmund Clark, and others, the mortgaged premises were sold in satisfaction of those mortgages to Rogers, and a deed was made to him of the premises, by the master, according to the order of confirmation of the sales. Those mortgages being prior liens, Rogers became the purchaser of the legal title. The mortgage in suit is dated in February, 1837, and is of Curtis Reed's equity of redemption merely. An ejectment would not lie, at the suit of this mortgagee against Rogers, the owner of the legal title. The only remedy of the complainant is by bill in equity for the sale of the mortgaged premises, which is this bill, or for redemption, and the subject matter is of the peculiar and exclusive jurisdiction of a court of equity.

At the date of this mortgage there was no statute limiting suits in equity. An act went into force in the month of January, 1839, that "bills for relief in case of the existence of a trust not cognizable in the courts of common law, and in all other cases not herein provided for, shall be filed, within ten years after the cause thereof shall accrue, and not after." This limitation was continued in the state statutes of 1849, and is now in full force. This mortgage is dated February 10, 1837. The first note is payable in twelve months, the second in eighteen months, and the third in two years. When the act of limitations went into force, the

cause of action had accrued. This court will administer statutes of limitation of the state as rules of property. I shall proceed to inquire whether the statute is applicable to this case.

This case is one of the "cases not provided for" in the statute. If the word "hereafter" had been inserted in the statute (as in similar laws of some of the states) so that it would read "hereafter accrue," the question would be relieved of doubt. The statute seems to direct the attention to such causes of action as shall accrue, and not to those that have then accrued. The supreme court of this state has applied this statute to causes of action accrued at the time of its enactment. Fullerton v. Spring, 3 Wis. 667; Parker v. Kane, 4 Wis. 1. This statute was copied from the statute of the state of New York. In that state a contrary application of the statute was made in Williamson v. Field, 2 Sandf. Ch. 533, and cases cited. In those cases the general rule is announced, that no statute is to have a retrospect beyond the time of its commencement, and to affect vested rights unless expressly so declared. But in the subsequent case of Spoor v. Wells, 3 Barb. Ch. 199, it is decided that an equitable claim, upon which a bill in chancery could have been filed previous to the time when the statute first took effect, and when the complainant was under no disability, is barred by the provisions of the statute at the expiration of ten years after the statute went into operation. The statute of the state of Massachusetts, in its general provisions as to claims that shall accrue, is the same as the statutes of New York and of Wisconsin, and a similar application is there made. Smith v. Morrison, 22 Pick. 430; [Sedg. St. Lim. 691]. The legislature of the state of Mississippi passed an act, in the month of February, 1844, that judgments rendered before the passage of the act in any other state of the Union, should be barred, unless suit was brought thereon within two years after the passage of the act. In the case of Bank of Alabama v. Dalton, 9 How. [50 U. S.] 522, it is decided by the supreme court of the United States that the act could be pleaded in bar to an action on a judgment rendered in the state of Alabama one year previous to its passage, and that the constitution of the United States did not prohibit that legislation as a law impairing the obligation of contracts. The time and manner of the operation of statutes of limitations generally depend on the sound discretion of the legislature. Cases, though, may occur where the provisions of a law may be so unreasonable, as to amount to a denial of right, and call for the interposition of the court.

A statute of limitations affects the remedy, not the contract, where a reasonable time is given for bringing suit on existing demands. Jackson v. Lamphire, 3 Pet. [28

---

[2] [From 6 Am. Law Reg. 406.]

U. S.] 280; Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; Bronson v. Kinzie, 1 How. [42 U. S.] 311; McCracken v. Hayward, 2 How. [43 U. S.] 608; Lewis v. Lewis, 7 How. [48 U. S.] 776; McElmoyle v. Cohen, 13 Pet. [38 U. S.] 312; Call v. Hagger, 8 Mass. 423; Holyoke v. Haskins, 5 Pick. 20; Smith v. Morrison, 22 Pick. 430; Morse v. Goold, 1 Kern. [11 N. Y.] 281. In Ross v. Duval, 13 Pet. [38 U. S.] 45, the court remarks: "It is a sound principle that where a statute of limitations prescribes the time within which suits shall be brought or an act done, and a part of the time has elapsed, effect may be given to the act, and the time yet to run being a reasonable part of the whole time, will be considered the limitation in the mind of the legislature in such cases." From a careful examination of the case of Murray v. Gibson, 15 How. [56 U. S.] 421, it will appear that the decision does not conflict with the previous decisions of the court. The act of the state of Mississippi, passed in March, 1846, as an amendment to the limitation law of the state, provided that, "no record of any judgment recovered in any court of record without the limits of the state against any person who was at the time of the commencement of the suit, on which the judgment is founded, or at the time of the rendition of such judgment, a citizen of this state, shall be received as evidence to charge such citizen, after the expiration of three years from the time of the rendition of such judgment without the limits of this state." The declaration was in debt on a judgment rendered in the state of Louisiana, in the month of November, 1844. By the literal terms of the act, the rights of a judgment creditor seem to be made dependent, not on his diligence in the institution or prosecution of his suit, but upon the trial of the action on his judgment, which is an event over which he has no control. The peculiar language of the act, if taken in its literal acceptation, might suggest a serious doubt as to the compatibility of its provision with the principles of common right, or with the federal constitution. For these reasons the courts construed the law to relate to the time of bringing the suit and not to the time of offering the record in evidence at the trial, and also confined its operation to judgments rendered in other states after its date. In addition to these reasons the law of the same state as then existing, and on which the case of Bank of Alabama v. Dalton [supra] was ruled, was applicable to the case of Murray v. Gibson [supra], and would have barred it if pleaded. The court applied the law to judgments rendered after its date, to prevent the injustice intended by the legislature, of excluding judgment records at the trial. The court remarks, "That laws should be so construed as not to allow a retroactive operation, where this is not required by express command, or by necessary or unavoidable implication. Especially should this rule of interpretation prevail, when the effect and operation are designed, apart from the intrinsic merits of the rights of parties to restrict the operation of those rights."

This bill was filed nineteen years after the date of the mortgage, seventeen years after the whole cause of action had accrued, and sixteen years and five months after the statute of limitations went into force. The complainant was under no legal disability, and might have brought suit before the ten years prescribed by the law had expired. I am of the opinion that this case should be considered as barred by the statute, but it is not essential to the proper disposition of the case, that the bill be dismissed on this ground.

In the year 1840 the sales to Rogers, in the foreclosure of the Finch mortgages, were confirmed, and deeds were executed and delivered, when he went into possession. Clark testifies that "I think I first began to look after his real estate in 1841 or '42. We got a man, who was going up there, to look into it, and he came back with rather a poor story. I first learned that James H. Rogers was in possession of the property ten years ago, perhaps more. I wrote to some gentleman in Milwaukee, and they wrote me that Rogers was in possession, claiming title. The information which John W. Allen gave us, whom we requested to look after our interests in Milwaukee, and who went there, was, that the thirty-six acres embraced in the mortgage had been foreclosed and sold on a previous mortgage, and that the twenty acres in Finch's addition embraced in the same mortgage had been sold at several tax sales, and that it was not then valued at over ten dollars per acre. This statement was made in 1841 or '42. This Mr. Allen was the first president, and a stockholder in the Cleveland Insurance Company." Rogers has continued in actual possession, and has paid the taxes mostly by suffering the property to be sold, and then taking deeds, and has made valuable improvements. The property has become very valuable, not from any labor, expenditure, or exertion of the complainant. It is the policy of this new state that titles should be quieted. The growth and improvement of the state requiring this policy, the legislature have wisely limited the time for bringing ejectments to ten years. Clark, the controlling officer of the insurance company, had notice by his agent and a stockholder of the company, that Rogers was in possession fifteen years before this bill was filed. From these facts, this bill should not be maintained at this late day. From the delay in bringing suit, after the notice that Rogers was in possession, claiming title to the land not considered worth the costs of a suit, the claim may be considered as abandoned or stale. In this respect this case somewhat resembles the case of McKnight v. Taylor, 1 How. [42 U.

S.] 161, in which it was remarked by the court—"In relation to this claim, it appears that nineteen years and three months were suffered to lapse before any application was made for the execution of the trust by which it had been secured. No reason is assigned for this delay, nor is it alleged to have been occasioned in any degree by obstacles thrown in the way by the appellant. * * * If, indeed, the suit had been postponed a few months longer, twenty years would have expired, and in that case, according to the whole current of authorities, the debts in the schedule would all have been presumed to be paid. But we do not found our judgment upon the presumption of payment, for it is not merely on the presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost. The rule upon this subject must be considered as settled by the decision of this court in the case of Piatt v. Vattier, 9 Pet. [34 U. S.] 405; and that nothing can call a court of chancery into activity but conscience, good faith and reasonable diligence, and where these are wanting, the court is passive and does nothing, and therefore, from the beginning of equity jurisdiction, there was always a limitation of suit in that court." The demand is not to be favored, even for the amount actually loaned, on account of the circumstances attending the negotiations, and for the reason of the delay in either redeeming the land from Rogers, or instituting proceedings for such redemption. In this case, on the part of the complainant, there is a want of conscience, of good faith, and of reasonable diligence, and upon the principle and spirit of the statute of limitations, and also of the policy of the country, this claim shou... not, at this late day, be enforced in a court of equity against Rogers.

This suit was sought to be maintained, on the ground that the equity of redemption of the Cleveland Insurance Company was not barred by the foreclosure of the Finch mortgages, as it was not made a party defendant on the record of those cases. If this complainant had been nominally made a defendant in those cases, there would be no doubt of its foreclosure by those decrees of all equity of redemption as a subsequent mortgagee, even if the proceeding had been against it, by a newspaper publication of a rule to appear and plead, answer or demur, according to the statute. Why Edmund Clark was made a defendant and the Cleve-land Insurance Company was omitted cannot be accounted for, unless from the nature of the several conveyances and the active agency of Clark in the negotiation, it was supposed that the mortgage was taken nominally in the name of the company for his use. In the whole business the name of the company only appears as payee of the notes and as mortgagee. The business was transacted by Clark without authority from the directors of the company, by a vote of the corporate body. There is no pretence that the directors entered on the minutes or records of the corporation any resolution or order authorizing Clark to consummate the negotiation by those deeds to and from himself, and to take the mortgage in the name of the company for double the sum actually loaned. Clark swears "that he did not know whether it was the funds of the company or his own funds that were advanced to Reed, and also, that if the company would not advance the money he would." From a subsequent examination of the books of the company and of memoranda, it may be inferred that the money advanced was the funds of the corporation. But be this as it may, Clark was the president of the company, the owner of the principal part of the stock, and the business man of the company. Under these circumstances, it was quite convenient for him to take a mortgage in the name of the corporation to secure a debt of his own, particularly in such an unconscientious transaction. He had the controlling power of the company. If he consulted the directors it was but mere matter of form. He was the company for all business purposes, and he testifies that he and the company had notice by their agent one or two years after the sale to Rogers, that he, Rogers, was in possession of the mortgaged premises claiming title.

If Rogers was claiming title, either by virtue of his purchase under the decrees of foreclosure of the Finch mortgages, or by purchase at sales for taxes, it was the duty of the Cleveland Insurance Company, by its officers or agents, upon the receipt of the notice, to have redeemed the land from those sales. They at the same time had notice that the land was not considered worth over ten dollars per acre, which would not warrant the expenses and disbursements required for redemption. Under these circumstances, it would not be equitable or just to decree, at this late day, after the land had become valuable, that Rogers' title and possession should be disturbed, for the mere omission of the Cleveland Insurance Company as a nominal defendant in the bills and proceedings to foreclose prior mortgages. If the Finch mortgages had been foreclosed by a newspaper advertisement and sale, in pursuance of authority in the mortgages, the Cleveland Insurance Company would have been entitled by law to redeem within two years. By the law then in force, the mort-

gagor had two years time to redeem from such sale, and "any person to whom a subsequent mortgage may have been executed shall be entitled to the same privilege of redemption to the mortgaged premises, that the mortgagor might have had, or of satisfying the prior mortgage, and shall by such satisfaction acquire all the benefits to which such prior mortgagee was or might be entitled." And the law directs that if the mortgaged premises so sold shall not be redeemed, the officer making such sale shall make a deed to the purchaser. And if there is an overplus of purchase money on hand, it shall be retained for subsequent incumbrances.

In the proceedings in court to foreclose the Finch mortgages, Clark, as a non-resident not served with process, was entitled by law to three years time to come in and petition the court to open the decree as to him, for the use of the insurance company. But, by the law, if such application be not made, the decree shall be adjudged to be confirmed, which confirmation shall have relation to the time of making the decree. And by law, land sold under execution was redeemable by the owner within two years after the sale, and a creditor by judgment or decree could acquire the interest of the purchaser within three months after. These several laws are rules of property, strictly observed, as to time, in all cases, and they are also laws of limitation. They fully demonstrate the policy of the state in regard to sales of land for the payment of debts. In the absence of laws limiting suits and proceedings in equity, the laws of limitation as to similar demands in courts of law are considered as rules proper to be observed in courts of chancery. From analogy to these laws, it is questionable whether a subsequent mortgagee, not named as a party in a bill to foreclose a prior mortgage, shall be allowed to redeem after two years. I am aware that the opinion prevails that such redemption cannot be denied, as the person claiming it was no party to the proceedings in court. The opinions of some courts favor this idea. But in several of the states a proceeding in court, and a decree against the prior mortgagor and terre tenant are sufficient to bar all subsequent incumbrances. The proceedings in court are open; the advertisement and sale are supposed to be known to all persons interested, who should attend the sale and bid up the property to cover their liens.

Every person is expected to look after his mortgages and liens, within a reasonable time. But whether a subsequent mortgagee should be limited in equity to redeem within two years, by analogy to the statute referred to, I need not now determine. But that he should redeem within a reasonable time, there is no doubt. The company, through its officers and agents, had notice of Rogers' possession under claim of title [within two years after his purchase at the master's sale in the foreclosure of the Finch mortgages. Inquiry should then have been made into his right to possession and claim of title],[3] and the land should have been redeemed from the sale within the two years, or a reasonable time thereafter. The complainant was under no disability to proceed on its mortgage, nor has Rogers done any act to delay or prevent a redemption or sale of the land. The complainant has done no act to enhance the value of the land, while Rogers has. The complainant cannot be allowed to profit by the delay, at Rogers' expense. For these reasons the court will not order a decree on this bill, that would disturb the possession or title of Rogers, or require him to pay the sum with interest, advanced to George Reed.

Rogers disclaims title to, or interest in the property in Finch's addition, consequently there is no decree to be ordered against him as to that. George Reed was discharged from his debt under the late bankrupt law, and he is thereby released from all personal responsibility or liability on the notes and mortgage.

The Milwaukee and Mississippi Railroad Company, I presume, was made a defendant, as claiming the right of way through section thirty. There are no parties, then, against whom a decree could be made in regard to the thirty-six acres. But if that land was sold under a decree in the case of Increase A. Lapham, as set forth in Rogers' answer, I presume the complainant has no claim of lien against it. If so, the bill will be dismissed as to both tracts. Bill dismissed.

NOTE [from original report]. That agent cannot acquire title as against principal. Ringo v. Binns, 10 Pet. [35 U. S.] 269; Church v. Marine Ins. Co. [Case No. 2,711]; Galbraith v. Elder, 8 Watts, 81; Barker v. Marine Ins. Co. [Case No. 992]; Hall v. Hallet, 1 Cox, 134; Lees v. Nuttall, 1 Russ. & M. 53; Andrews v. Mowbray, 1 Wils. Exch. 71; Whichcote v. Lawrence, 3 Ves. 740; Ex parte James, 8 Ves. 348; Chalmer v. Bradley, 1 Jac. & W. 59; Whitcomb v. Minchin, 5 Madd. 92; Norris v. Taylor, 49 Ill. 18; Collins v. Case, 23 Wis. 230; Grumley v. Webb, 44 Mo. 444. It is the settled doctrine of courts of equity that great delay of either party, unexplained, in not prosecuting his claims, constitute such laches as forbid the interference of a court of equity. Hough v. Coughlan, 41 Ill. 130. The statute of limitations binds courts of equity as well as law in cases of concurrent jurisdiction: and sometimes, by way of analogy binds equitable titles. Story, J., in Pratt v. Northam [Case No. 11,376]. As to doctrine of courts of equity, as to limitations, laches, and stale claims, see opinion of Clifford, J., in Badger v. Badger [Id. 718]; also, Ferson v. Sanger [Id. 4,751].

[NOTE. On complainant's appeal the decree of the circuit court, dismissing the bill, was affirmed.
[The grounds of affirmation were: That the deed of Reed's assignee in bankruptcy to Rogers vested in the latter such title as Reed had at the time of the decree adjudicating him a bankrupt. Consquently, Rogers held the relation of mortgagor to the complainant more than

[3][From 6 Am. Law Reg. 406.]

10 years before the suit was brought; also, Rogers held the actual possession in 1839, when the 10-years statute of limitations was enacted, and the bar was complete in 1849. And, further, that the suit in question, being solely cognizable in equity, was within the fortieth section of that act, and was manifestly barred thereby.

[The court further held that, assuming the bill to be true, no relief could be had as to the other defendants, for, by his purchase of the bankrupt's title, Rogers took the equity of redemption, and thus cut off whatever claims to the land the other defendants had.

[The opinion was delivered by Mr. Justice Catron. Cleveland Ins. Co. v. Reed, 24 How. (65 U. S.) 284.]