SHELDON and another *v*. THE KEOKUK NORTHERN LINE PACKET CO. and others.

*(Circuit Court, W. D. Wisconsin. 1881.)*

1. EQUITY PLEADING—MULTIFARIOUSNESS—MISJOINDER—DEMURRER.

Whether or not a bill is demurrable on the ground of multifariousness or misjoinder of causes of action will depend on the special circumstances, and what the due administration of justice demands, in each case.

2. SAME—STATUTE OF LIMITATIONS—LACHES.

A bill set out the facts that the complainants were judgment creditors, with returns of no property found, of an insolvent corporation; that the property of their common debtor was withdrawn from their reach by reason of transfers thereof to the defendants, in pursuance of a scheme to which they and the debtors were parties, though in different degrees, and, in some respects, by different acts; and that such scheme was carried out by the parties thereto with intent to hinder, delay, and defraud the complainants and other creditors. *Held*, that the bill was not demurrable on the ground of multifariousness or misjoinder of causes of action. *Held*, that, under the Wisconsin statutes, an action of this nature must be brought within six years after the fraud is discovered.

*Held*, that the defence of the statute of limitations can be taken advantage of on demurrer.

*Held*, that it will not be inferred, in support of a demurrer setting up the statute of limitations, from the fact that the alleged fraud occurred more than six years prior to the commencement of the suit, that the facts constituting the frauds were discovered before that period of six years also.

*Held, also*, that a demurrer, insisting on lapse of time short of the statutory period, will not be sustained, as the bill does not, upon its face and without resorting to inferences, make out a clear case of unreasonable delay on the part of the complainants after the discovery of the fraud.

Query, whether the doctrine of laches or lapse of time can ever be invoked in a suit to which a statute of limitation applies.

In Equity.

*S. U. Pinney* and *F. J. Lamb*, for complainants.

*Sloan, Stevens & Morris* and *J. H. Davidson*, for defendants.

HARLAN, Justice. The defendants demur upon these grounds:

*First*, that the bill is multifarious, in that it seeks to enforce independent judgments in which the complainants have no joint interest, and also because it unites with the cause of action against the Keokuk Northern Line Packet Company, in which the defendant Davidson has no interest, a cause of action against Davidson in which his co-defendant has no interest; *second*, that if complainants ever had any cause of action against the defendants, or either of them, the delay which occurred without suit was so unreasonable as to deprive them of any right to relief in equity; *third*, that the suit is barred by the statute of limitations of Wisconsin.

The objection of multifariousness will be first considered. Pass-

ing by many details of the transactions set out in the bill, it is sufficient now to say that the suit proceeds upon these general grounds:

That the complainants are judgment creditors (with returns of no property found) of the Northwestern Union Packet Company, an insolvent corporation, organized for the purpose of engaging in the business of transporting persons and property; that the property of the common debtor was all withdrawn from their reach through transfer thereof made to the defendants, the Keokuk-Northern Line Packet Company and Peyton S. Davidson, in pursuance of a plan or scheme to which they and the debtor were parties, though in different degrees, and, in some respects, by different acts; and that such plan or scheme was devised or carried out, by the parties thereto, with the intent to hinder, delay, and defraud the complainants and other creditors of the Northern Union Packet Company.

The relief sought is a decree adjudging such transfer to have been fraudulent and void as to the complainants, and other then existing creditors of the Northern Union Packet Company, and subjecting, so far as it may be necessary to the demands of complainants and other creditors who may come into this suit, such of the property, so transferred, as may still be in the possession of defendants; and also requiring the Keokuk Northern Line Packet Company to account for the earnings received from that portion transferred, or which has been lost, destroyed, or used up since the transfers were made.

It has been held, by the supreme court of the United States, to be impracticable to lay down any fixed, unbending rule as to what constitutes multifariousness or misjoinder of causes of action. *Oliver* v. *Piatt*, 3 How. 411; *Gaines* v. *Chew*, 2 How. 619; *Barney* v. *Latham*, October term, 1880–1.* The court must necessarily exercise a large, though, of course, a sound discretion in allowing the union in the same suit of matters which do not alike or equally affect all the parties. Each case must depend upon its special circumstances, and the necessities which may arise out of the due administration of justice in that case. As a general rule, the court will not compel parties to incur the expense, vexation, and delay of several suits, where the transactions constituting the subject of the litigation, or out of which the litigation arises, are so connected by their circumstances as to render it proper and convenient that they should be examined in the same suit, and full relief given by one comprehensive decree. A different rule would often prove to be both oppressive and mischievous, and could result in no possible benefit to any litigant, whose object was not simply to harass his adversary, but to ascer-

*11 Rep. 72.

tain what were his just legal rights. As to the general propositions there can be no doubt under the authorities.

Is the bill objectionable because two separate judgment creditors unite in assailing transactions which have resulted, according to the allegation made, in sweeping away all tangible property of their common debtor from their reach? I think not. Nothing is more common than for several judgment creditors, having exhausted their legal remedies, and having equal right to resort to the property of the same debtor for the satisfaction of their claims, to unite in assailing a fraudulent conveyance or transfer of the debtor's property. "For they all have a common interest in the suit; and, if they succeed, the decree will be equally beneficial to all in proportion to their respective interests." Story, Eq. Pl. (9th Ed. by Gould,) § 537*a*, 533, 286; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139; *Hamlin* v. *Wright*, 23 Wis. 494. It is equally clear, I think, that the bill is not multifarious, and that there is no misjoinder of causes of action, because Davidson and the Keokuk Northern Line Packet Company are united as defendants.

Taking (as we must upon demurrer) all the material allegations of the bill to be true, it appears that the transfers complained of were all made in execution of a plan or scheme to strip the Northern Union Packet Company of all its tangible property, so that its creditors, some of whom were then pressing their claims by suit, could not reach any of it by the ordinary process of law. Those two defendants are, in effect, charged to have been confederates, with the managers of the Northern Union Packet Company, in carrying out the fraud to the injury of the creditors of the insolvent corporation. They conspired (one, perhaps, by more distinct and numerous acts than the other) with the corporation to hinder, delay, and defraud its creditors. They are charged with being in the possession of the fruits of a fraudulent scheme of which they were cognizant, and in the execution of which, it is alleged, they were active participants. They are, consequently, upon the theory of the suit, interested in defeating the complainants upon the issue, sharply defined, that the property demanded by complainants was disposed of to the defendants in pursuance of a fraudulent scheme, in the execution of which they give their aid. The relations which, according to the bill, the defendant Davidson held to all the property transferred, as well as to the various corporations which at different times controlled its use, being of such a character as to preclude the possibility (the allegations of the bill being sustained) of upholding the conveyance to him, the transfers

to the Keokuk Northern Line Packet Company are adjudged to have been fraudulent and void. It cannot be that the established rules of equity practice would, under these circumstances, compel complainants to institute separate suits againt the present defendants.

A leading authority upon this point of the case is *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139. That suit was by several complainants holding distinct judgments against an insolvent corporation. There were several defendants, all of whom were sought to be held liable, in different proportions and in different characters, upon the general ground that the property of the corporation had been withdrawn from the reach of complainants by the fraudulent acts of the several defendants. After analyzing the bill, Chancellor Kent said:

"It thus appears from the bill that all the defendants were not jointly concerned in every injurious act charged. There was a series of acts on the part of the persons concerned in the company, all produced by the same fraudulent intent, and terminating in the deception and injury of the plaintiffs. The defendants performed different parts in the same drama, but it was still one piece, the entire performance, marked by different scenes; and the question now occurs whether the several matters charged are so distinct and unconnected as to render the joining of them in one bill a ground of demurrer."

After reviewing the authorities, he remarks:

"That the principle to be deduced from them is that a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct."

Again he remarked:

"When we consider that the plaintiffs are judgment creditors, having claims against the Genesee Company perfectly established, and not the subject of litigation in this suit, and that the general right claimed by the bill is a due application of the capital of that company to the payment of their judgment; that the subject of the bill and of the relief, and the only matter in litigation, is the fraud charged in the creation, management, and disposition of the capital, and in which charge all the defendants are implicated, though in different degrees and proportions,—I think we may safely conclude that this case falls within the reach of the principle, and that the demurrer cannot be sustained."

The case is cited with approval in Story, Eq. Pl. § 286, note, where it is said that—

"The same principle has been supposed properly to justify the joining of several judgment creditors in one bill against their common debtor, and his grantees, to remove impediments to their remedy created by the fraud of their debtor in conveying his property to several grantees, although they take by separate conveyances, and no joint fraud in any one transaction is charged against them all."

To the same effect speaks the supreme court of Wisconsin in *Hamlin* v. *Wright,* 23 Wis. 494, where it is said that—

"The fact that all the grantees have become accessory to the fraudulent attempt of the debtor to place his property beyond his creditor's reach, gives them such a common connection with the subject-matter of the suit that they may be joined, although the purchase of each was distinct from the others, and each is charged with participating in the fraud in respect to his own purchase. * * * There was, therefore, no misjoinder of causes of action in uniting the different fraudulent defendants, although they purchased at different times, and each is charged only with fraud in his own purchase."

See, also, Story, Eq. Pl. (9th Ed.) §§ 271–280, § 530–540; Adams, Eq. (6th Am. Ed. by Sharswood,) 617, note 2; *Blake* v. *Van Tilborg,* 21 Wis. 680; *Bassett* v. *Warner,* 23 Wis. 673.

As to the second point raised by the demurrer, that complainants, independent of any statute of limitations, have lost their right to relief by delay in suing, I do not think it well taken. The authorities cited under this head by counsel for defendants apply to suits not strictly within any statute of limitations. The legislature here has declared that actions for relief on the ground of fraud, in cases heretofore solely cognizable by the court of chancery, "may be commenced within six years after the discovery of the facts constituting the fraud." Administering the law in this suit, I do not think relief should be denied even if it appeared that the complainants might have applied for relief at an earlier date, when the frauds complained of were first discovered. The court should not assume or infer unreasonable delay, after such discovery, from the isolated fact that the fraud charged was committed several years before the commencement of the suit. It is consistent with the bill that the fraud, and the facts constituting the fraud, were not discovered until some time after they were committed. If the doctrine of laches or lapse of time can ever be asked in a suit as to which there is a statute of limitations prescribing the period within which such suit may be commenced, a demurrer, insisting upon lapse of time short of the statutory period, should not be sustained, unless the bill upon its face, without resorting to inferences, makes a clear case of unreasonable delay, upon the parts of the complainants, after the discovery of the fraud charged.

This brings me to the question of the statute of limitations. In considering this question I have carefully examined the several revisions of the statute of Wisconsin as well as those of New York, to which counsel refers. I have also read the decisions of the New York

court to which complainants refer. My best judgment—and, perhaps, as much may be inferred from what I have already said upon the question of laches and lapse of time—is that the ten-year limitation has no application to this case, for the reason that suits are "provided for" in the previous section, prescribing a limitation of six years where relief is sought on the ground of fraud in a case therefor "solely cognizable by the court of chancery." The contrary view is maintained by counsel upon the authority mainly of *Corning* v. *Stebbins,* 1 Barb. Ch. 589; *Lawrence* v. *Trustees,* 2 Denio, 577; and *Spoor* v. *Wells,* 3 Barb. Ch. 199. The first of those cases was a suit by a receiver appointed upon a creditor's bill after the return of an execution unsatisfied. The object of the suit was to reach the equitable interests and things in action of the defendant. The chancellor said: "And I know of no limitation of that right, short of the ten years which the statute has fixed, within which suits purely of equitable cognizance must be brought in this court." When (1846) that case was decided, the limitation prescribed by the statutes of New York and Wisconsin were, as to suits in equity, the same. It was true, in 1846, of the Wisconsin statutes, that there was no provision expressly fixing a period for the commencement of suits "purely of equitable cognizance," and therefore such cases were then held in the New York courts to be embraced by the ten-year limitation, which was the period prescribed for "all other cases not (1) herein provided for." But the ten-year limitation did not, after the Wisconsin Revision of 1858, apply to suits "purely of equitable cognizance," because such suits, wherever relief is sought on the ground of fraud, were provided for in a previous section, subjecting them to the six-year limitation. The Wisconsin Revision of 1849 provided that the limitation applicable in suits at law should govern in cases of which equity courts had concurrent jurisdiction with the courts of law, and should not apply in suits of which a court of equity had "peculiar and exclusive jurisdiction;" also that "bills for relief on the ground of fraud shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time." The Revision of 1858, as it seems to me, either for the purpose of providing a uniform limitation in all actions "for relief on the ground of fraud," or to reduce the limitations in suits purely of equitable cognizance, expressly declares that the six-year limitation shall apply to actions for relief on the ground of fraud "in cases which were heretofore solely cognizable by the court of chancery"—the cause of action to be deemed as accruing upon the discovery of the fraud. In respect to such suits there is,

it seems to me, a manifest difference between the Revision of 1858 and the law previous to that date. What I have said about the case of *Corning* v. *Stebbins* seems to be applicable to cases in 2 Denio and 3 Barb. Ch. *supra*. Assuming, then, that the present suit must have been commenced within six years after the discovery of the facts constituting the fraud charged, the important inquiry is whether it appears, from the face of the bill, to be barren. Many courts have held that such a defence could not be made by demurrer. But the doctrine is now settled otherwise. Story, Eq. Pl. (9th Ed. by Gould,) § 484, note 1, and § 503. That this objection may be made by demurrer is the doctrine of the Wisconsin supreme court, notwithstanding its statutes (1858) declare that "the objection that the action was not commenced within the time limited can only be taken by answer." *Howell* v. *Howell*, 15 Wis. 59; *Hyde* v. *Supervisors*, 43 Wis. 135.

The present action was commenced June 3, 1879, and counsel for defendant contends that the cause of action must be deemed to have occurred April 1, 1873, "on or about" which time, the bill states, not only the amount agreed to be contributed by the Northwestern Union Company to the Keokuk Northern Line Packet Company was delivered into the custody of the latter corporation, but the pretended sale of real estate to Davidson occurred. But the bill also shows that the agreement with the packet company contemplated an appraisement of the property to be transferred to it, and that it should be paid for in the stock of the new company, upon the basis of such appraisement. The bill further shows that the appraisement did not, in fact, take place until July, 1873; that the several bills of sale, from the Northwestern Union Packet Company to the Keokuk Northern Packet Line Company, were executed on divers days between March 31 and October 31, 1873. How many of such bills of sale were executed before, and how many after, June 3, 1873, is not stated. The bill also shows that the stock was not delivered to the vendor corporation until some time in the year 1874. It is also alleged that the conveyance of real estate to the defendant P. S. Davidson was not executed until August 19, 1873. Certainly, the transaction by which defendant Davidson secured the title to the real estate in La Crosse was not consummated until that conveyance was made. And it does not distinctly appear that the sales to the Keokuk Northern Packet Line Company became irrevocable or were consummated prior to June 3, 1873. An instructive case upon this point is *Muir* v. *The Trustees, etc.*, 3 Barb. Ch. 481, where Chancellor Walworth said:

"It may be proper to say, however, that although it is alleged in the bill that the executors of Leake obtained possession of his property, etc., in or about the year 1830, it does not distinctly appear that it was more than 10 years before the filing of the complainant's bill. And to enable a defendant to take advantage of the statute of limitations upon demurrer, it must distinctly appear, by the bill itself, that the complainant's remedy is barred by the lapse of time."

Aside, however, from this view, I am of opinion that it does not, in the sense of the authorities, appear upon the face of the bill that the suit is barred by the limitation of six years, unless it be true (which cannot be conceded) that the failure of complainants to allege that the frauds complained of were discovered within six years before suit, is as false to their suit as if they had admitted, on the face of the bill, in terms, that the frauds were discovered more than six years before the commencement of the suit. This position rests, I suppose, upon the general statement in some of the books that demurrer will lie where the bill shows, upon its face, that the suit is barred. The cases cited in the books, in support of the general rule, show that defendants' counsel misinterpreted the rule. For instance, in *Hoare* v. *Peck*, 6 Sim. 51, it appeared on the face of the bill, not only when the fraud occurred, but when it was discovered by complainants. So in *Horenden* v. *Lord Amerley*, 2 Scho. & Lef. 636, it appeared, upon the face of the bill, that the fraud was discovered nearly 60 years before suit. So in *Foster* v. *Hodgson*, 19 Ves. 182, it appeared on the bill that the fraud charged had occurred 12 years after the complainant might have discovered it, with very slight diligence.

Since the statute declares that the cause of action shall not be deemed to have occurred until the discovery of the facts constituting the fraud charged, and since the utmost which defendants can claim is that the bill shows the fraud to have been committed more than six years before the commencement of the suit, it cannot be said to be apparent from the bill that six years passed after the fraud was discovered—that is, after the right of action accrued—before suit. A demurrer, therefore, does not meet the objection here urged. And such is the construction of a somewhat similar statutory provision by the courts of New York. In *Radcliff* v. *Rowley*, 2 Barb. Ch. 31–2, the court gave a construction to the provision which declares that "bills for relief, on the ground of fraud, shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time." Chancellor Walworth said:

"But it does not appear on the face of the bill when W. Radcliff discovered the alleged fraud, or that he ever did discover the fact, now stated by his heirs, that the judgment had been paid by Rowley, as the agent of the judgment debtor, with funds in his hands belonging to the latter, before the sheriff's sale.  *  *  *  And I think, upon a proper construction of the statute, it is not necessary that the complainant should allege in his bill that he has discovered the fraud complained of within six years. A demurrer, therefore, will not lie, to a bill for relief on the ground of fraud, although it appears that the fraud occurred more than six years before the commencement of the suit, unless it also appears positively, or by necessary intendment, that the fraud was discovered by the party aggrieved more than six years before he filed his bill for relief. Where that does not appear, the defendant must be left to make his defence by plea or answer, so as to prevent an affirmative issue upon the question of the discovery of the fraud."

The position thus taken by the New York court I regard as sound.

What has been said necessarily leads to the conclusion that the court will not, in support of a demurrer, setting up the statute of limitations, infer from the fact that the alleged fraud occurred more than six years prior to the commencement of the suit, that the complainants discovered the facts constituting the frauds before that period of six years.

For the reasons given, an order will be entered overruling the demurrer, and giving the defendants 30 days within which to plead or answer.