### OAKLEY et al. v. TAYLOR et al.

(Circuit Court, E. D. Missouri, E. D. November 12, 1894.)

FEDERAL JURISDICTION—CONTEST OF WILLS.
Federal courts have no jurisdiction of a direct action to cancel a will.

In Equity. Bill by Mary C. Oakley and others against Mamie L. Taylor and others to cancel a will. Bill dismissed.

S. M. Chapman and Wm. C. & James C. Jones, for plaintiffs.

J. W. Emerson, C. P. & J. D. Johnson, Geo. D. Reynolds, and J. Perry Johnson, for defendants.

PRIEST, District Judge. The original jurisdiction of this court is invoked to set aside instruments admitted to probate by the probate court of Butler county, Mo., as the will of Mrs. L. J. Spear. The question, and the only one, of serious difficulty, is whether this court has jurisdiction to cancel and annul the will by a proceeding directed alone to that end. Congress has given to the circuit courts original jurisdiction of all suits of a civil nature, at common law or in equity, when the matter in dispute exceeds $2,000, and the

controversy is waged between citizens of different states; and, under such conditions, the jurisdiction is concurrent with that of the state courts. It seems to have been, and was, the design of congress, where proper citizenship existed, to extend the common-law and equity jurisdiction of the federal circuit courts to as complete an extent as the same jurisdiction might exist in the several state courts; but there is manifest no intention to confer a special jurisdiction unknown to the common law, and not existing according to the usages of courts of chancery. There can be no doubt, however, of the capacity of federal courts to take cognizance of rights newly created, and enforce them, according to their own rules of procedure, when the subject-matter will permit. The right and the remedy are different things. The right will be recognized, but the remedy indicated may be disregarded. It has never been a part of the function of courts of law or equity, by a proceeding having that especial purpose in view, either to establish or reject wills. This jurisdiction was committed exclusively to the ecclesiastical courts in England, for which are substituted, with a jurisdiction extending to probate of wills affecting real estate, by the several states of the Union, courts of probate, variously styled probate, surrogate, or orphans' courts, not, however, exercising common-law or chancery cognizance; and these courts have always enjoyed this jurisdiction exclusive of either courts of common law or equity, tending a field of business from which other courts were excluded by the very nature of their organization and procedure.

Speaking with respect of the necessary simplicity and the summary character of the procedure of courts that usually have to do with wills and the administration of estates, Mr. Schouler (Ex'rs & Adm'rs, § 13) says:

"As befits an authority which thus pervades the sanctity of a household, crosses the threshold, and exposes to public view the chamber of mourning, probate jurisdiction in the United States is exercised with great simplicity of form, as well as decorum. Costs and fees are trifling. The mode of procedure is by a simple petition, which states the few facts essential to give the court jurisdiction. In various counties the needful blanks may be obtained from the register; and of so informal a nature is the hearing before the judge or surrogate that parties appear often without legal counsel, the usual aspect of a court room in the rural counties being that of an executive office, where business is summarily disposed of."

And directed in the same line of thought is the following expression of the court in the case of In re Broderick's Will, 21 Wall. 503, 509, wherein it is said:

"The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership, and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with the least chance of injustice and fraud, and that the result obtained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers, both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality."

From this it will be seen that it could not have been the purpose of congress to vest in federal courts a particular jurisdiction

which had never been exercised by courts of common law or equity, nor to give them a jurisdiction which could not be conveniently administered, and which, by virtue of the present policy manifested in the constitution of probate courts, could not be well assumed by federal authority. I must therefore conclude, from looking at the grant of jurisdiction to the circuit court alone, that it has no such jurisdiction as that contended for in this case.

But it is said that the statutes of the state of Missouri invests the state circuit courts with a jurisdiction to entertain contests of this character, and that a statute conferring such a right should be recognized in this court, and enforced according to its usages and procedure.

This principle, as broadly as is contended for in this case, is thus announced in Reynolds v. Bank, 112 U. S. 405, 410, 5 Sup. Ct. 213:

"It may be conceded that the legislature of a state cannot directly enlarge the equitable jurisdiction of the circuit courts of the United States. Nevertheless, an enlargement of equitable rights may be administered by the circuit courts, as well as by the courts of the states (In re Broderick's Will, 21 Wall. 503, 520); and, although a state law cannot give jurisdiction to any federal court, yet it may give a substantial right of such a character that, when there is no impediment arising from the residence of the parties, the right may be enforced in the proper tribunal, whether it be a court of equity, admiralty, or common law."

But, if we concede this principle,—and we have no disposition to oppose it,—it does not tend directly to sustain the plaintiffs' position.

Section 8888, Rev. St. Mo. 1889, provides:

"If any person interested in the probate of any will shall appear within five years after the probate or rejection thereof, and by petition to the circuit court of the county, contest the validity of the will or pray to have a will proved which has been rejected, an issue shall be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court."

Sections 8880 and 8882 vest the jurisdiction to admit or reject a will in the first instance in the probate court, and provide a summary mode of contest. The action of the probate court, however, does not become final until after the expiration of five years, without action in the circuit court, under the provisions of section 8888. The question then arises, upon a proper construction of section 8888, supra, whether it vests a new right, or simply provides a remedy in the state courts by which the action of the probate court in admitting or rejecting a will may be revised. It appears, not only from an examination of the Missouri statute, but also from the interpretation of them by the supreme court of Missouri, that no new right is given either to the proponents or contestants of a will by section 8888, but simply a remedy by which the adjudication of the probate court may be appealed from or reviewed. The contest instituted in the circuit court is not the exercise of an original jurisdiction, but an appellate review or superintending authority. Without action first had in the probate court, the state circuit court would have no jurisdiction; for it does not exist at common law or in equity, and is not elsewhere conferred by statute.

In Hughes v. Burriss, 85 Mo. 660, after quoting the statutes referred to as we have set them forth, the court says:

"We understand these statutory provisions to mean that an ex parte order, such as the probate court is authorized to make in admitting a will to probate, shall not be conclusively binding on the parties interested until after the expiration of five years from the time such order is made, nor conclusively binding upon the parties interested if they are infants, married women, or persons of unsound mind, until after the expiration of a like period after their respective disabilities are removed. As to such parties, the legislature, in the sections above quoted, has characterized the force and effect to be given to the order of a probate court probating a will, and we are not authorized to give such order any greater force or effect. In the case of Dickey v. Malechi, 6 Mo. 177, decided in 1829, this court, speaking through Judge Napton, remarked in reference to a petition filed to establish a will which had been rejected by the county court: 'I do not see that the circuit court, in entertaining the petition of Malachi, did exercise any original jurisdiction. The legislature may undoubtedly provide other modes besides the ordinary form of appeal by which the controlling power of the circuit court may be exercised, and in the tenth section, respecting wills and testaments, they have made such a provision.'"

The tenth section referred to in the case of Dickey v. Malechi, supra, is the same as section 8888 of the present statute, supra.

The court, speaking again concerning the same subject, in Benoist v. Murrin, 48 Mo. 48, said:

"The effect of the contestant's petition, and the proceedings under it, was to transfer the subject-matter from the probate to the circuit court for adjudication in the latter court. There was no appeal in form, for the result of the process was the transference of the contest from an inferior to a superior court, and that may be done without a formal appeal, as was decided in this court in Dickey v. Malechi, 6 Mo. 182, and where it was held that the jurisdiction of the circuit court in cases like the present was not original. The jurisdiction not being original, it must be derivative, in effect, as on appeal."

Again, the same court, in Lamb v. Helm, 56 Mo. 420, said:

"When a contest is commenced under our statute either to establish a will which has been rejected or allowed and probated in the probate court, the effect is the same as if an appeal had been taken from the action of the probate to the circuit court, where the question could be tried anew, just as if no action had been taken in the probate court. The party who relies on or asserts the validity of the will must prove it up, and in the same manner and to the same extent as if no action had been taken in the probate court. In fact, the action of the probate court becomes wholly void by such contest, so far as the efficacy of the will is concerned. The effect of the contestant's petition and proceedings under it was to transfer the whole matter to the court [circuit court] where the proceedings are pending."

And, again, in Tapley v. McPike, 50 Mo. 589, it is said:

"The contesting of the will in the circuit court operates in the nature of an appeal from the probate in the county court."

It is very clear from the expressions of the supreme court of Missouri that the jurisdiction of the circuit court exercised under section 8888, supra, is not original, but is in the nature of an appellate derivative or superintending jurisdiction; and if this be true, under the decision of the supreme court in Barrow v. Hunton, 99 U. S. 80, 82, this court clearly has no jurisdiction. In the last case it is said:

"The question presented with regard to the jurisdiction of the circuit court is whether the proceeding to procure a nullity of the former judgment in such

a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review, or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case; otherwise, the circuit courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible."

Some cases are referred to in the brief of counsel which, upon a casual reading, would tend to excite a contrary view, but, when critically and analytically examined, are in harmony with the views here expressed. These cases are reviewed very satisfactorily and ably in the case of Reed v. Reed, 31 Fed. 49, by Judge Welker, and in which we express a very hearty concurrence.

The least that can be said of this question is that it is one of serious doubt, and this, of itself, ought to determine the judgment adversely to plaintiffs. Where there exists a substantial doubt as to the jurisdiction of the federal courts, the controversy should be declined; and especially is this true where its tendency would be to remove from domestic tribunals those matters of domestic administration with a view to which they are especially constructed and equipped. Were we to enter a judgment here annulling the probate of this will, and recognition be refused it by the probate court of Butler county, in order to enforce its judgment this court might be compelled to seize and administer the entire estate of the testator. The embarrassment that would attend such action does not need to be pictured that it may be appreciated. Moreover, were this court to entertain jurisdiction of this cause erroneously, the time might lapse within which the plaintiffs could pursue relief in the state tribunal, and they thus be debarred of relief against the action of the probate court of Butler county. The suit will be dismissed for want of jurisdiction.