WILLIAMS v. CRABB et al.*

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 800.

1. FEDERAL COURTS—JURISDICTION—REMEDIES GIVEN BY STATE STATUTE.

A state cannot by legislation confer a substantive right or remedy in the way of a suit inter partes upon its own citizens that will not be available to the citizens of the other states, nor can it by any device restrict such right or remedy thus made available to enforcement in its own courts, the conditions of citizenship being such that it would otherwise be enforceable in the federal courts.

2. SAME—SUIT TO CONTEST WILL.

Where the statutes of a state confer upon a state court of equity original jurisdiction of suits to contest the validity of a probated will a circuit court of the United States has concurrent jurisdiction of such a suit in which the amount in controversy is sufficient and the parties are citizens of different states.

3. EQUITY—JOINDER OF CAUSES OF ACTION—MULTIFARIOUSNESS.

Two causes of action, one for setting aside a will and the other for setting aside a deed, both made by the same person, and alleged to have been procured by the fraud and undue influence of one of the defendants, may be joined in the same bill, without rendering it multifarious, where the rights of the other defendants will not be prejudiced thereby, although they claim interests in different portions of the property in controversy through their codefendant; nor is it an objection to such joinder that the statutes of the state require the issue with respect to the will to be submitted to a jury, since a court of equity has power to conform to such requirement.

4. SAME—PARTIES—PRACTICE OF FEDERAL COURTS.

To a suit in equity by one of the two heirs at law of a decedent to set aside a will and a deed executed by such decedent for fraud and undue influence, and to recover complainant's share of the property, the other heir is not an indispensable party, and a federal court will not require his joinder where it would oust its jurisdiction.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

S. S. Gregory and Frank Crozier, for appellant.

Levy Mayer, for appellees.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This was a suit in equity, brought by the appellant, a citizen of Michigan, against the appellees, citizens of Illinois, to set aside the will of one Ellen Williams, a sister of the appellant, for fraud and undue influence, and also to set aside and cancel a deed of certain real estate situate in the city of Chicago, made by Ellen Williams to the appellee Christopher C. Crabb, on the like grounds of fraud and undue influence, and have him charged with a trust in relation to the real estate alleged to be held under the will and deed. There is other incidental relief prayed for in the bill, as the appointment of a receiver, but these are the grounds of the action and the principal relief sought, the purpose of the suit being to recover from Crabb a one-half interest in the real estate so held by him, and to set aside as a cloud upon the complainant's title the will and deed alleged

* Rehearing denied.

to have been obtained by fraud. The allegations of the bill are, in substance, as follows: That on September 2, 1896, at the city of Chicago, Ellen Williams died, unmarried and without issue, leaving as her sole heirs at law her brother, the complainant, John Jay Harvey Williams, and her sister, Helen Alexander; that at the time of her death she was seised in fee of certain described real estate, situate in Chicago, of much value; that for some time prior to her death the land was held by the Chicago &. South Side Rapid Transit Company under a lease purporting to have been executed by Ellen Williams on June 15, 1892, and that lots and parcels of land were still in possession of the South Side Elevated Railroad Company under a lease dated October 1, 1897, executed by the defendant Christopher C. Crabb, who claims to hold the premises under the will of Ellen Williams and under a warranty deed executed to him by Ellen Williams, the company paying therefor an annual rent of $6,165; that at the time of her death Ellen Williams was also seised in fee of certain other lands in Chicago, now occupied and in possession of a person known and styled as "Nellie Tuttle," under a lease to her by defendant Crabb, who claims title to the land by virtue of the last will and testament of Ellen Williams; that on January 8, 1894, a deed by Ellen Williams, dated on December 13, 1893, was filed of record in the recorder's office of Cook county, purporting to convey such lands in fee to defendant Crabb. The bill further charges that, although the title to the lands appears of record in the defendant Crabb, the purchase price thereof was paid by him out of the funds of Ellen Williams, and on her behalf and by her direction, and that the title thereto was held in trust by Crabb for Ellen Williams, as he, the said Crabb, had admitted to divers persons; that a house, costing $95,000, was built by Crabb upon the premises, and paid for out of the funds of Ellen Williams, and that he held the lands in trust for the use and benefit of Ellen Williams, upon a mere naked legal title without equity; that after the death of Ellen Williams, Crabb seized, and still holds possession and enjoys, the rents and profits of the said premises; that the will of Ellen Williams, under which defendant Crabb claims to hold the land, dated on May 19, 1896, was on September 10, 1896, admitted to probate before the probate court of Cook county, Ill., and admitted to record as the last will and testament of Ellen Williams, and letters testamentary issued thereon to Crabb, as the executor, without bonds, as directed in the will. The will is set out verbatim in the bill, the effect of which is to devise all of the testatrix's estate, real and personal, to Christopher C. Crabb, and to appoint him her sole executor, with request that he be not required to give any bond or security as executor. That on the 17th day of August, 1896, there was filed in the recorder's office of Cook county a warranty deed by Ellen Williams, dated on May 19, 1896, purporting to convey to Crabb the premises known as No. 47 Congress street and No. 2131 Dearborn street, in Chicago, Ill., setting out the deed and description of the land in full. The bill further charges that the writing purporting to be the last will and testament of Ellen Williams was not such; that she was not aware of the contents, but that the same was procured by the fraud of the defendant Crabb, and should be set aside and annulled; that prior to the making of the will Crabb was,

and for many years had been, the attorney in fact and confidential agent and adviser of Ellen Williams, and the manager of her business affairs, and was intrusted with the care and custody of her property; and that he, starting as her agent some years before, in small matters, gradually assumed and took upon himself the entire control of her business and affairs, and was so trusted and acquired such influence over her mind that she was almost entirely excluded from any participation in the management of her own estate, and was almost entirely controlled and dominated in the conduct of her estate by Crabb, who, having such control, retained and instructed his own solicitor to draw up the will, directing him to make himself (Crabb) the sole executor, without bonds, and to vest her entire estate in him upon her death. Similar allegations are made in regard to the procurement of the deed to Crabb, that it was obtained from Ellen Williams by the same fraud and undue influence. Then follow allegations to the effect that early in her life Ellen Williams, who was living with her parents in humble circumstances, had been led astray by one much above her station, left her home, and led an immoral life, and for many years conducted, under the name of "Lizzie Allen," a house of prostitution in Chicago; and that the defendant Crabb, then a clerk in a dry goods store in Chicago, became acquainted with her, and fastened himself upon her and her estate, and became a parasite in such house of prostitution, managing and directing it for her; that Crabb, for many years before her death, professed to be her lover, and passed much of his time in her apartments; that while so pretending and deceiving Ellen Williams he was sustaining relations with a person calling herself "Frankie Leland," who now claims to be his wife; that upon Ellen Williams' death Crabb removed her from her house of prostitution, and installed therein as keeper the said Frankie Leland, who entered into the private apartments of Ellen Williams, and conducted the house of prostitution for the benefit of the defendant Crabb for some months, when Crabb, claiming to own the same, sold all the furniture, fixtures, etc., to Nellie Tuttle, a public woman, for a large sum of money, who is now conducting the business under contract with Crabb. Wherefore the complainant asks that an issue be made whether the writing so admitted to probate be the last will and testament of Ellen Williams or not, and that the said warranty deed to Crabb be declared null and void, and set aside, and that an undivided one-half of the premises be declared to vest in complainant in fee simple. The defendants Christopher C. Crabb and Frankie Leland appeared, and filed their demurrer to the amended bill, the principal grounds insisted upon being: (1) That the bill was multifarious in seeking to set aside a will and a deed and to declare a trust, and asking for a partition of the property; (2) that Helen Alexander, the sister of complainant, and his coheir, was an indispensable party to the bill, and alleged in the bill to be a citizen and resident of the state of Illinois; (3) that the federal court was without jurisdiction of the case made by the bill. The court below sustained the demurrer, and dismissed the bill, upon what ground does not clearly appear, no opinion being filed.

It is claimed by appellant's counsel that all of the grounds of the demurrer except the one of multifariousness were overruled by the

court, but the decree shows that the bill was dismissed for want of equity. That in this case must mean for want of jurisdiction, as upon the merits of the allegations no question has been or could be made against the sufficiency of the bill to make a case for setting aside both the will and the deed. And, granting the want of jurisdiction to set aside the will for fraud, it is clear that the court would have jurisdiction to set aside the deed. The bill shows an equitable case for setting aside the deed for fraud, and, if within the jurisdiction of the court, the complainant should not be dismissed out of court because a greater measure of relief is demanded than he is entitled to, unless there have been joined irreconcilable and inconsistent causes of action. In the original bill Helen Alexander was joined as one of the defendants, the same demurrer being put in; but being a citizen, as was alleged and is conceded, of the state in which the suit is brought and where the defendants reside, it was thought that the court would not have jurisdiction of the suit, for want of proper diverse citizenship of all the parties, and therefore the complainant amended his bill, omitting his sister as a defendant, and not joining her as a complainant. The principal question argued in this court was the one of jurisdiction, it being urged with earnestness and force that, the case involving the setting aside of a will already allowed and admitted to probate by the probate court of Cook county, the United States circuit court has not jurisdiction of the case for the purpose of setting it aside. It is, no doubt, well settled by authority, both in this country and in England, that, under the general powers of a court of chancery in England, or a court of equity in this country, a bill to set aside a will for fraud cannot be entertained, except under special circumstances. This is because the proof and allowance of wills has always properly belonged, formerly in England to the ecclesiastical courts, and in this country to the courts of probate, or to the courts especially empowered by the statutes of the states to pass upon the proof and allowance of wills. But these adjudications go not upon any ground connected especially with a want of jurisdiction in the federal courts, but upon the more general ground that they are not cases either of common law or general equity jurisdiction, but belong especially to the ecclesiastical and probate courts, which have always exercised jurisdiction over this class of cases. It has not been made a question of the jurisdiction of any particular court, but one of jurisdiction in equity. But in those states where equity jurisdiction is extended by the legislature over cases to set aside wills after probate for fraud, there would seem to be no good reason why the jurisdiction of the federal court, the requisite citizenship existing, should not be concurrent with that of the state courts, as in other cases. The jurisdiction of the federal court has never been denied on the ground that the courts were federal courts, but on the ground that this class of cases are not the subject of legal or equitable jurisdiction, and so was denied equally to the state and to the federal courts. If the state courts of general equitable jurisdiction may, under the law, entertain these cases by suit originally brought there, and not coming up on appeal from the probate court so as to form part and parcel of the probate proceedings for the probate of wills, it is difficult to see why the federal courts should not entertain a concurrent jurisdiction when the requisite di-

verse citizenship exists. Otherwise this class of litigants would not be placed upon the same footing as litigants in other cases, where the jurisdiction of the court is conceded. These cases seem to come fairly within the provision of the jurisdiction act of 1888, giving original jurisdiction in all civil cases at law and in equity arising between citizens of different states. It is well settled that rights and remedies, legal or equitable, provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the federal courts, and that the terms "law" and "equity," as used in the constitution, although intended to mark a distinction between the two systems of jurisprudence as known and practiced at the time of its adoption, do not restrict the jurisdiction conferred by it to the very rights and remedies then recognized and employed, but embrace as well not only rights newly created by the statutes of the states, but new forms of remedies, to be administered in the courts of the United States according to the nature of the case. A state cannot, by its legislature, confer a substantive right or remedy in the way of a suit inter partes, upon its own citizens, that will not be available to the citizens of the other states; nor can it, by any device, restrict such right or remedy thus made available, to enforcement in its own courts, the conditions of citizenship being such that they would otherwise be enforceable in the federal courts By any other view it would be in the power of a state by legislation to deprive citizens of other states either of the new right or remedy given by the state statute or of the forum granted by the federal constitution and laws. The citizen of another state cannot be compelled to make such election, or to accept a remedy upon condition that he forego the constitutional forum to which he would otherwise be entitled. Railway Co. v. Whittons, 13 Wall. 270, 20 L. Ed. 571; Ex parte Boyd, 105 U. S. 647, 26 L. Ed. 1200; Boom Co. v. Patterson, 98 U. S. 406, 25 L. Ed. 206; Bigelow v. Nickerson, 17 C. C. A. 1, 70 Fed. 113, 30 L. R. A. 336; Darragh v. Manufacturing Co., 23 C. C. A. 609, 78 Fed. 7. And in Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, it was decided that the jurisdiction of the circuit court of the United States, in a case for equitable relief, was not excluded because, by the laws of the state, the matter was within the exclusive jurisdiction of its probate courts; but, as in all other cases of conflict between jurisdictions of independent and concurrent authority, that which has first acquired possession of the res which is the subject of the litigation is entitled to administer it. Williams v. Benedict, 8 How. 107, 12 L. Ed. 1007; Bank v. Horn, 17 How. 160, 15 L. Ed. 70; Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Freeman v. Howe, 24 How. 454, 16 L. Ed. 749; Hook v. Payne, 14 Wall. 255, 20 L. Ed. 887.

Section 7 of chapter 148 of the Revised Statutes of Illinois, so far as is important to the consideration of this case, is as follows:

"Provided, however, that if any person interested shall, within two (2) years after the probate of any such will, testament or codicil in the county court, as aforesaid, appear, and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up, whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the circuit court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the

practice in courts of chancery in similar cases, but if no such person shall appear within the time aforesaid, the probate as aforesaid shall be forever binding and conclusive on all of the parties concerned, saving to infants or (and persons) non compos mentis, the like period after the removal of their respective disabilities. And in all such trials by jury, as aforesaid, the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence, and to have such weight as the jury shall think it may deserve."

It is peculiarly within the province of courts of equity to set aside deeds of conveyance for fraud, and this statute in express terms confers a like power upon the state courts of general chancery jurisdiction in regard to probated wills. No doubt has been raised in regard to the power and jurisdiction of the proper state court of general equity jurisdiction to entertain such a suit as this to set aside a will in a proper case. If the courts of equity of the state can do it, there is no reason to deny concurrent jurisdiction to the federal courts as between citizens of different states. The question is of importance, and, the authorities on the subject being not uniform, we have given it careful consideration. We think, both upon principle and the weight of authority, the jurisdiction should not be withheld. So far as the supreme court has spoken upon the subject, if it cannot be said to be fairly adjudicated, it has clearly been in favor of the jurisdiction. That court said, in Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524, Judge Field rendering the opinion:

"In the Case of Broderick's Will the doctrine is approved, which is established both in England and in this country, that by the general jurisdiction of courts of equity, independent of statutes, a bill will not lie to set aside a will or its probate; and, whatever the cause of the establishment of this doctrine originally, there is ample reason for its maintenance in this country from the full jurisdiction over the subject of wills vested in the probate courts and the revisory power over their adjudications in the appellate courts. But that such jurisdiction may be vested in the state courts of equity by statute is there recognized, and that, when so vested, the federal courts, sitting in the states where such statutes exist, will also entertain concurrent jurisdiction in a case between proper parties. There are, it is true, in several decisions of this court, expressions of opinion that the federal courts have no probate jurisdiction, referring particularly to the establishment of wills; and such is undoubtedly the case under the existing legislation of congress. The reason lies in the nature of the proceeding to probate a will as one in rem, which does not necessarily involve any controversy between parties; indeed, in the majority of instances, no such controversy exists. In its initiation all persons are cited to appear, whether of the state where the will is offered or of other states. From its nature, and from the want of parties, or the fact that all the world are parties, the proceeding is not within the designation of cases at law or in equity between parties of different states, of which the federal courts have concurrent jurisdiction with the state courts under the judiciary act; but whenever a controversy in a suit between such parties arises respecting the validity or construction of a will or the enforcement of a decree admitting it to probate, there is no more reason why the federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties."

Again, the court say, in the same opinion:

"The suit in the parish court is not a proceeding to establish a will, but to annul it as a muniment of title, and to limit the operation of the decree admitting it to probate. It is, in all essential particulars, a suit for equitable relief,—to cancel an instrument alleged to be void, and to restrain the en-

forcement of a decree alleged to have been obtained upon false and insufficient testimony."

In Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006, it was held that:

"Circuit courts, as courts of equity, have no general jurisdiction for annulling or affirming the probate of a will. Jurisdiction as to wills, or their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States. So far as it is ex parte, and merely administrative, it is not conferred; and it cannot be exercised by them at all, until in a case at law or in equity its exercise becomes necessary to settle a controversy of which a court of the United States may take cognizance by reason of the citizenship of the parties."

The same principle seems also to have been conceded in the Case of Broderick's Will, 21 Wall. 509, 22 L. Ed. 599, where the supreme court, speaking through Mr. Justice Bradley, says:

"The statute of 1862 has been referred to, which gives to the district courts of California power to set aside a will obtained by fraud or undue influence, or a forged will, and any probate obtained by fraud, concealment, or perjury. Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the circuit courts of the United States so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the circuit courts, as well as by the courts of the states. And this is probably a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding. Indeed, much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties. But the statute referred to cannot affect this suit, inasmuch as the statute of limitations would still apply in full force, and would present a perfect bar to the suit."

In Richardson v. Green, 9 C. C. A. 565, 61 Fed. 423, this question, under a similar statute of Oregon, came directly before the United States circuit court of appeals of the Ninth circuit. Very much like the case at bar, that case was brought to cancel a certain deed purporting to have been made by Philanda Terwilliger to her daughter, and also to cancel a will devising to the daughter certain real estate. The circuit court had overruled a demurrer to the bill, upon which a decree was entered, which was affirmed by the circuit court of appeals. It was held that the proceeding under the laws of Oregon to contest the validity of a will which had already been admitted to probate, being a suit between parties, was one of which the United States court may take jurisdiction, when the amount in controversy is sufficient, and the parties are citizens of different states. Judge Knowles, delivering the opinion in chief, says:

"The suit for contesting a will after the probating of the same in Oregon is undoubtedly one between parties, and binding only the parties thereto. Here it will be seen that, if a suit is essentially a suit of a civil nature for equitable relief, and it is customary to prosecute the same in any state court where the action arose, whether the same is a county court, or a probate court, or a district or circuit court, the proper federal court will have concurrent jurisdiction of the same with such state courts, where the amount is sufficient, and the parties are citizens of different states, as prescribed by the United States statutes. It should be observed, also, that when it is customary for such state courts to hear and determine such equitable suits, a United States court, under proper conditions, may hear them."

And Judge McKenna, in his concurring opinion, says:

"I concur in the reasoning and conclusion of my associate as to the deed and will, and think both are forgeries. I believe, also, that the authorities

cited by him establish that courts of equity, by virtue of their general authority to enforce equitable rights and remedies, have no power to avoid a will, or to set aside its probate on the ground of fraud, mistake, or forgery; this being within the exclusive jurisdiction of courts of probate. But where such a remedy is given to a state court by an action inter partes, the remedy may be adopted by the federal courts, if the controversy is between citizens of different states."

The proper distinction between a proceeding to probate a will in common form and contesting the validity in a court of equity after being probated, is properly drawn in Brodhead v. Shoemaker (C. C.) 44 Fed. 518. It is there said:

"Under section 2423 of the Code of Georgia, a proceeding to probate a will in common form is a probate proceeding pure and simple, the probate and record not being conclusive upon any one interested in the estate adversely to the will, and, if afterwards set aside, not protecting the executor in any of his acts further than the payment of the debts of the estate. Under the same section, and sections 2424 and 2427 of the same Code, a proceeding to probate a will in solemn form is a proceeding inter partes to establish the will conclusively and as a muniment of title; and when, in such a proceeding, the heirs at law are brought in, and they contest the validity of the will and the capacity of the testator, an issue or controversy is formed or made which can be classified as a suit at law. From the statutes cited, and the record of the case as made up to the time of removal, it appears perfectly clear that the proceeding pending in the superior court of Floyd county, Ga., taken in connection with the removal statutes of the United States, was a suit in which there was a controversy removable by the defendants to the circuit court of the United States for the Northern district of Georgia, upon compliance with the conditions prescribed in said removal statutes; and this, within the rule laid down by the supreme court in Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006."

In Kirby v. Railroad Co. (C. C.) 106 Fed. 551, in the United States circuit court for the Southern district of Iowa, the jurisdiction is conceded. In that case the court say (page 556):

"Neither by an original action nor by an attempted removal from a state court can this court acquire jurisdiction so as to probate a will, or appoint an administrator, or in determining the validity of a will preliminary to the appointment of an executor or administrator. That is clear. And it is equally clear that this court will take jurisdiction to contest the validity of a will already admitted to probate, if a controversy of the requisite amount and the parties citizens of different states," etc.

The case of Oakley v. Taylor (C. C.) 64 Fed. 245, decided by the district judge of the Eastern district of Missouri, is, no doubt, an authority for the appellees. The statute in that state was similar to that in Illinois, except that it provided for contesting the rejection as well as the allowance of a will by the probate court. The court in that case declined the jurisdiction because it was doubtful, and was derivative, and not original, and the statute, not in form, but in effect, provided for appeal from a probate to a state circuit court.

Reed v. Reed (C. C.) 31 Fed. 49, is cited as an authority against the jurisdiction, and such it may be, though, according to the opinion in that case, by Judge Welker, it was a case of attempted removal from a state court of proceedings under special statutory proceedings classed with special remedies, and which make the common pleas court of that state an assistant to the probate court in the probate of wills and settle-

ment of estates. These two cases seem to be more nearly in point against the jurisdiction than any other cases cited.

Copeland v. Bruning (C. C.) 72 Fed. 5, is also relied upon as an authority for appellees, but the case is clearly distinguishable from the one at bar. That was a case of removal, and the ground upon which a motion to remand was made was that a proceeding to contest the validity of a will which has not been admitted to probate is not a suit at common law or in equity, but is a proceeding to determine whether the will is valid, and entitled to probate; and the holding of the court was that the federal courts have no jurisdiction, either original or upon removal from a state court, of a suit instituted to determine the validity of a will, as a preliminary step in determining whether its probate should be granted or not.

The cases of In re Cilley (C. C.) 58 Fed. 977, and Wahl v. Franz, 40 C. C. A. 638, 100 Fed. 680, are also relied upon as authority for the appellees, but are clearly distinguishable from the case at bar in that they were cases to establish the original probate of a will. In re Cilley is a strong case upon the points decided, and the opinion by Aldrich, J., concurred in by Judge Colt, is able and exhaustive; but so far as the case being an authority against the jurisdiction in a case like the one at bar, it is an authority the other way, so far as the opinion of the court could be an authority upon a question not directly involved in the case,—as the court in the opinion expressly recognize the jurisdiction of the federal courts in a case like this. The court, in their opinion, say:

"The petitioner places great stress upon a class of cases like Gaines v. Fuentes and Ellis v. Davis, which put in issue the validity of wills. An examination of these cases will disclose that they are not inconsistent with the repeated declarations of the supreme court that federal courts have no jurisdiction over the probate of wills, and the apparent confusion arises from the fact that the cases either came from the territorial courts or from states where, by statute, courts of equity have been clothed with jurisdiction to entertain bills to set aside wills on the ground of fraud. Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524, was a direct proceeding to annul a will already established, based upon a local law vesting the ordinary courts with jurisdiction to that end. Mr. Justice Field, in sustaining jurisdiction in that case, reaffirms the doctrine of the Case of Broderick's Will, that by jurisdiction of courts of equity as established both in England and in this country, independent of the statutes, a bill will not lie to set aside a will or its probate. 'And,' he says (page 21), 'whatever the cause of the establishment of this doctrine originally, there is ample reason for its maintenance in this country from the full jurisdiction over the subject of wills vested in the probate courts, and the revisory power over their adjudications in the appellate courts. But,' he says, 'that such jurisdiction may be vested in the state courts of equity by statute is there recognized, and that, when so vested, the federal courts, sitting in states where such statutes exist, will also entertain concurrent jurisdiction in a case between proper parties,'—thus distinctly putting the decision upon the local law conferring equity jurisdiction, and disclaiming that jurisdiction exists over probate proceedings coming from a state where courts of equity are not clothed with such statutory power. And Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006, was a bill in equity to recover property, and to set aside a will already established. The court, in its opinion, expressly distinguishes the case then under consideration from those involving proceedings to establish wills, over which it disclaims jurisdiction, and likewise puts the decision sustaining jurisdiction to administer relief in that particular case upon the ground that the law ob-

taining in the state authorized suits in equity to annul and set aside the probate of a will."

The case of Wahl v. Franz, supra, decided by the circuit court of appeals for the Eighth circuit, is relied upon perhaps more than any other to fortify the position taken by appellees against the jurisdiction. But that case was decided by a divided court, Sanborn, J., delivering a vigorous and able dissenting opinion. As we understand the case, it was essentially one for the probate of a will, and it was held that a proceeding for the probate of a will is not a suit of a civil nature at law or in equity, within the meaning of the federal judiciary act of 1888. The law provided for an appeal to the circuit court of the state as a part of the machinery for the probate of a will, and it was held that the proceeding in that court was not removable to the United States circuit court under the act of congress. The distinction seems to have been taken that in the case of an appeal the appeal forms a part of the machinery provided by the state law for the probate of wills, and, unless the will is probated, the United States court cannot have jurisdiction.

In view of these express adjudications of the circuit courts and of the circuit courts of appeal with so many recognitions of the jurisdiction by the supreme court, there would seem to be little ground for doubt of the jurisdiction of the federal courts in such a case; and we have no hesitation in holding that the want of jurisdiction alleged cannot be sustained.

The other grounds of demurrer, the jurisdiction being conceded, do not seem formidable; the objection for multifariousness and want of parties being more under the control of the court, to be adjudged and administered so as to best preserve the rights of the parties and do justice to all. In the judgment of the court the bill is not multifarious. It may be said that two causes of action, one for setting aside a will and the other for setting aside a deed, are joined; but, if so, they are both of an equitable nature, and, what is more, both grow out of the same transaction and subject-matter, which is the fraud and gross overreaching alleged to have been practiced by Crabb upon the deceased, Ellen Williams. These two causes for equitable relief, growing, as they do, out of the same circumstances of fraud and undue influence, may properly be united in the same bill. They will naturally depend upon substantially the same proofs and circumstances, and nothing would be gained by separate suits. It is difficult to believe that the interests of any of the defendants can be jeoparded by uniting the two causes of action, if they can be said to constitute two causes. It is very true that the interests of all the defendants are not identical, but that is by no means necessary. They all have an interest, however, —Crabb as the principal defendant, and who is charged with a trust in case the deed and will are set aside; and the others as having some interest under and derived from him. Certainly the relief sought is not wholly disconnected, but is properly asked, as growing out of the same transaction. The rule in regard to multifariousness is not very well settled, and each case must depend mainly upon its own facts and circumstances. If the court can see that justice to all parties may be done, it will exercise a discretion not to put the complainant out of

court for such a cause. In Brown v. Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468, the supreme court say:

"It is contended by the appellant that the decree below should be reversed on the ground that the cross-bill is multifarious. In Shields v. Thomas, 18 How. 253, 15 L. Ed. 368, this objection was urged against a bill, and in considering the objection the court say: 'There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule; and that conclusion is that each case must be determined by its peculiar features.' So, in Gaines v. Chew, 2 How. 619, 642, 11 L. Ed. 402, 411, the court say: 'In general terms a bill is said to be multifarious which seeks to enforce against different individuals demands which are wholly disconnected. In illustration of this it is said, if an estate be sold in lots to different persons, the purchasers could not join in exhibiting one bill against the vendor for a specific performance against all the purchasers. The contracts of purchase being distinct, in no way connected with each other, a bill for a specific execution, whether filed by the vendor or vendees, must be limited to one contract. It is well remarked by Lord Cottenham in Campbell v. Mackey, 7 Sim. 564, and in 1 Mylne & C. 603, "to lay down any rule applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible." Every case must be governed by its own circumstances, and, as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suits should be avoided by uniting in one bill all who have an interest in the principal matter in controversy, though the interest may have arisen under distinct contracts.' "

It is not indispensable that all parties should have an interest in all the matters contained in the suit. It will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others. Addison v. Walker, 4 Younge & C. 442; Parr v. Attorney General, 8 Cl. & Fin. 435; Worthy v. Johnson, 8 Ga. 238. The rule, so far as there is any rule upon this subject, is perhaps as well as anywhere stated by Mr. Justice Harlan in Sheldon v. Packet Co. (C. C.) 8 Fed. 769, as follows:

"It has been held by the supreme court of the United States to be impracticable to lay down any fixed, unbending rule as to what constitutes multifariousness or misjoinder of causes of action. Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622; Gaines v. Chew, 2 How. 619, 11 L. Ed. 402; Barney v. Latham (Oct. term, 1880–81) 103 U. S. 205, 26 L. Ed. 514. The court must necessarily exercise a large, though, of course, a sound, discretion in allowing the union in the same suit of matters which do not alike or equally affect all the parties. Each case must depend upon its special circumstances, and the necessities which may arise out of the due administration of justice in that case. As a general rule, the court will not compel parties to incur the expense, vexation, and delay of several suits, where the transactions constituting the subject of the litigation, or out of which the litigation arises, are so connected by their circumstances as to render it proper and convenient that they should be examined in the same suit, and full relief given by one comprehensive decree. A different rule would often prove to be both oppressive and mischievous, and could result in no possible benefit to any litigant whose object was not simply to harass his adversary, but to ascertain what were his just legal rights. As to the general propositions, there can be no doubt under the authorities."

See, also, to the like effect, Von Auw v. Fancy Goods Co. (C. C.) 69 Fed. 448; Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55, and cases cited; Barcus v. Gates, 32 C. C. A. 337, 89 Fed. 783; Bank v. Sprague (C. C.) 8 Fed. 377; De Neufville v. Railway Co., 26 C. C. A. 306, 81 Fed. 10.

Under these authorities, it seems clear that the objection for multifariousness cannot be sustained.

If, in regard to the will, it be objected that under the Illinois statute an issue must be made up for trial by jury, while the question of fraud in the procurement of the deed might be tried by the court, the answer is that the objection is neither grave nor insuperable. A court of equity is elastic in its procedure, and can adapt itself to the varied circumstances of a case in order to do justice. It is not uncommon for a court of equity to impanel a jury to try questions of fact, and especially questions of fraud; and it may set aside or disregard verdicts, according to the justice of the case. Quite likely the court might order one jury to try both issues, or it might try one by one jury and the other by another, or one by a jury and the other by the court. The verdict of the jury under the issue made up under this statute might, no doubt, be set aside by the court, if it should appear to be against the justice of the case. So that there is no hard and fast rule to prevent the court from meting out justice according to the principles of equity, which it is its prime function to administer.

Nor can the objection prevail that Helen Alexander is not made a party defendant or a party complainant with her brother, having an equal interest in the estate of her sister with the complainant. She is not an indispensable party. The ground of demurrer is that she was not made a defendant, but she has no interest adverse to that of the complainant, and so should not be made a defendant. It is not objected that she is not made a co-complainant. She would have been a proper party complainant, and possibly a necessary, as distinguished from an indispensable, party. Railroad Co. v. Zeigler, 39 C. C. A. 431, 99 Fed. 114. By the original bill Helen Alexander was made a party defendant, and she was alleged to be a citizen of Illinois. In the amended bill she was not made a party, nor is there any allegation as to her citizenship, but the demurrer alleges that she is a citizen of Illinois. The briefs of counsel on both sides concede that she is a citizen of the same state with the defendants, and we think the court may assume that to be the fact; so that, if she were made a party, the requisite citizenship to give the federal court jurisdiction would be wanting, as the court would, in determining the question of jurisdiction, arrange the parties according to their interests in the controversy, and, her interest being with the complainant, she would be placed on that side, which would deprive the court of jurisdiction, as one of the complainants in that case would be a citizen of the same state with the defendants. It seems clear that under the adjudications that would be a good reason that the court should not require her to be brought in. In West v. Randall, 2 Mason, 181, Fed. Cas. No. 17,424, one of the beneficiaries in a trust deed filed a bill against the trustee to secure settlement of the estate. The other beneficiaries were not made parties, and it was objected that they were indispensable. The opinion was

delivered by Mr. Justice Story, who decided that the other beneficiaries were not indispensable parties, basing his decision upon the propositions that, if they were brought into court, they would oust jurisdiction of the court, and that there was no controversy with them which required their presence. It was insisted by counsel in that case, as in this case, that a decree would not close the matter, but would leave the absent parties to again litigate the whole matter, and thus vex the defendants with double inconvenience and perils. Judge Story said, "This is certainly true, and it is as certain that they could not be plaintiffs here without ousting the present plaintiff of his remedy here." While admitting the general rule that all parties of interest must be before the court, he said:

"The rule is not, then, so inflexible that it may not fairly leave much to the discretion of the court; and upon the facts of the present case, it being impossible to make other heirs plaintiffs consistently with the preservation of the jurisdiction of the court, or to make them defendants from any facts which can be truly charged against them, I should hesitate a long while before I would enforce the rule, and, if the cause turns solely upon this objection, should not be prepared to sustain it."

And in Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289, Chief Justice Marshall delivering the opinion, the court says:

"It is contended that he [the plaintiff] is a tenant in common with the others, and ought not to be permitted to sue in equity without making his co-tenants parties to the suit. This objection does not affect the jurisdiction, but addresses itself to the policy, of the court. Courts of equity require that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. It is not like the discretion of parties,—an inflexible rule, a failure to observe which turns the party out of court because it has no jurisdiction over his cause,—but, being introduced by the court itself for the purposes of justice, is susceptible of modification for the promotion of those purposes. In this case the persons who are alleged to be tenants in common with the plaintiffs appear to be entitled to a fourth part, not of the whole contract, but of a specially described portion of it, which may or may not interfere with the part occupied by the defendant. Neither the bill nor the answer alleges such an interference, and the court ought not, without such allegation, to presume it."

In Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, it was held that in a bill in equity by one distributee of an estate against the administrator it is not indispensable that such distributee make the others parties, if the court is able to proceed to a decree, and do justice to the parties before it without injury to absent parties equally interested. The court says:

"But this rule, like all general rules, being founded in convenience, will yield whenever it is necessary that it should yield in order to accomplish the ends of justice. It will yield if the court is able to proceed to a decree, and do justice to the parties before it, without injury to absent persons equally interested in the litigation, but who cannot conveniently be made parties to the suit. West v. Randall, 2 Mason, 181, Fed. Cas. No. 17,424; Story, Eq. Pl. 89 et seq."

These adjudications are also in line with equity rule No. 47, which is as follows:

"In all cases where it shall appear to the court, that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made

parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may in their discretion proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

According to the decision of the United States court already cited, this is not a proceeding in rem, but a suit inter partes. Considered simply as a suit to set aside a will, already probated, for fraud, it is not a proceeding in rem. But in its largest aspect it is a suit to recover complainant's one-half interest in the valuable estate, of which he is one of two heirs. It is not simply a suit to contest a will, or the legal probate thereof, but it is to establish the right of the complainant to the possession and enjoyment of real estate, and to relieve his title thereto from incumbrances fraudulently put upon it, which cloud the title. At common law ejectment would lie, but the complainant's remedy under our system is by bill in equity. Nobody will be bound by any decree except the parties thereto. Without being joined as complainant, and without bringing suit on her own behalf, Helen Alexander's interest in the estate cannot be affected by a decree in favor of this complainant. The defendant Crabb cannot justly complain that the suit is not brought to recover the entire estate of Ellen Williams, rather than a one-half interest. The utmost consequence that could follow would be that the defendants might be subjected to another suit by Helen Alexander, but that would be no hardship compared with turning the complainant out of court, who would now, no doubt, be barred, under the statute, from commencing another action so far as the will is concerned.

The decree of the court below is reversed, and the cause remanded for further proceedings.