## DE KORWIN v. FIRST NAT. BANK OF CHICAGO et al.

No. 8924.

Circuit Court of Appeals, Seventh Circuit.
Aug. 2, 1946.

Rehearing Denied Sept. 11, 1946.

Charles R. Aiken and Aiken, McCurry, Bennett & Cleary, all of Chicago, Ill., for appellant.

John W. Kearns, Wm. B. McIlvaine, Jr., J. F. Dammann, Winfield T. Durbin, Cranston Spray, Howard D. Moses, David A. Watts, Frank L. Paul, and Gilbert H. Osgood, all of Chicago, Ill. (Wilson & McIlvaine, Amberg, Livingston, Kearns & Dahlin, Scott, MacLeish & Falk, and Bell, Boyd & Marshall, all of Chicago, Ill., of counsel), for appellees.

Adams, Moses & Culver, of Chicago, Ill., for guardian ad litem.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree dismissing a bill in equity for lack of jurisdiction. The lower court also denied plaintiff's motion for leave to dismiss the cause as to certain defendants and also denied plaintiff's motion to file an amended complaint. Plaintiff challenges the propriety of these rulings.

The complaint alleges that the plaintiff,[1]

---

[1] While the motion to dismiss the cause was under advisement the plaintiff died and his widow, Margaret de Korwin, individually and as executrix of his estate, by letters issued in the Probate Court of Cook County, was substituted as plaintiff. The issues are not affected by this death and substitution. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294, 295, 58 S.Ct. 586, 82 L.Ed. 845. As the parties have throughout their briefs referred to the original plaintiff, we shall do likewise.

Joseph Maria de Korwin, is a citizen of the Republic of Poland; the individual defendants are citizens of the States of California, Florida, Illinois, Maryland, Michigan, New Jersey and Pennsylvania; the defendant First National Bank of Chicago is a national banking association; the defendant charitable institutions are Illinois corporations.

It further alleges that Otto Young, a wealthy Chicago resident, died in 1906 leaving him surviving his wife and four daughters. By his will, after individual bequests and annuities, he created a trust estate for the benefit of his wife and daughters and their issue. The will directed that the widow receive $100,000 annually, and the daughters receive life annuities of $36,000. The will provides: "In the event that either of my daughters shall die, either before or after my decease, leaving issue her surviving, such issue shall be entitled to receive so long as they shall continue to survive, the same share of the net income of said trust estate which deceased daughter would if living have been entitled to receive under the provisions of this will, by way of annuity or otherwise." The trust was to be terminated and distributed "when the last survivor of my daughters shall have deceased and the youngest surviving child of my daughters shall have attained the age of twenty-one (21) years all of said trust estate then remaining in the hands of said trustee shall be divided in equal shares between my grandchildren, the surviving issue of any deceased grandchild to stand in the place of and receive the share which such deceased grandchild would have been entitled to receive if then living." It is apparent that during the life of the trust the entire income was to be distributed or held for the benefit of the widow and daughters or their issue and that upon the trust's termination the principal remaining was to be distributed to Otto Young's grandchildren and the issue of any deceased grandchild.

The complaint shows that the First Trust and Savings Bank of Chicago was nominated as trustee and accepted such nomination. In 1929, while still acting as trustee, the First Trust and Savings Bank was consolidated with the Union Trust Company, an Illinois corporation, and changed its name to the First Union Trust and Savings Bank, an Illinois corporation. The consolidated corporation then took over the administration of the estate. In 1933, the First Union Trust and Savings Bank merged with the First National Bank of Chicago, and since this merger the latter has served as trustee.

The complaint further shows that the plaintiff married Selma Cecile Young, one of the daughters of Otto Young, the testator, and by her had a son, Stanislaus Stephen de Korwin. Selma Cecile Young died intestate after divorcing plaintiff. The son died intestate in 1940 without having any children born to him. It is through this deceased grandchild of Otto Young that the plaintiff claims an interest in the estate.

The plaintiff also alleges that he is a member of a large class of persons who are commonly and generally interested in the subject matter of the suit and that he represents the class. He names as defendants a great many persons—devisees or legatees under the will of Otto Young or beneficiaries of the trust created by the will. He also includes as parties persons unknown and persons not in being who might become entitled to or claim an interest in the property upon coming into being.

By the first count of the complaint plaintiff alleges that the trust created by the will is void as violative of the rule against perpetuities and that the trust property is therefore intestate property and should be distributed to the heirs of Otto Young, including plaintiff. By this count plaintiff asks the court to interpret the will.

In the second count, plaintiff alleges that even if the trust is valid he has an interest in a certain amount of the trust property which must eventually be distributed as intestate property. He also alleges in this count that he is a member of a class entitled to share in this distribution and asks for an accounting.

By the third count, plaintiff makes the charge that the present trustee is acting as trustee de son tort because of the failure of the successor trust companies to comply

with the provisions of the will relative to appointment of successor trustees.

The prayer of the complaint following the three counts outlined above seeks the following relief: (1) That a guardian ad litem be appointed for the infant and incompetent defendants; (2) that the devise in trust be held void as violative of the rule against perpetuities; (3) that the corpus of the testamentary trust be ruled intestate property and distributed to plaintiff and other heirs at law of Otto Young; (4) that the plaintiff be adjudged issue of his son and as such entitled to a beneficial interest in the trust estate; (5) that, if the trust be held valid, the First National Bank of Chicago be held trustee de son tort and be required to account and be surcharged with all losses and fees paid to it under its trusteeship; (6) that the trust estate be divided and partitioned and distributed to the heirs at law of Otto Young, including plaintiff, and (7) that the plaintiff be adjudged to represent a class and that the action is properly brought by him as such representative.

The court appointed a guardian ad litem who appeared and answered the complaint and also filed a counter and cross claim to the complaint. Several of the named defendants filed their answers and some also moved to dismiss the complaint.

The defendants' motion to dismiss was based upon lack of jurisdiction on the grounds that (1) diversity of citizenship was not alleged specifically, (2) a realignment of the parties destroyed diversity and (3) an alien cannot sue the citizens of more than one state.

After argument on the motion to dismiss and before the decree dismissing was entered, plaintiff sought to dismiss certain party defendants who were asserted to have the same interest as plaintiff and therefore should be realigned. Upon such realignment it was claimed diversity would be destroyed. Plaintiff also asked leave at that time to file an amended complaint instanter. By this complaint plaintiff removed the first ground mentioned above as defeating jurisdiction and sought to remove the second by not including the parties whom defendants sought to realign. The lower court denied plaintiff's motion to dismiss as to certain defendants, denied his motion for leave to file an amended complaint instanter and dismissed his bill for want of jurisdiction.

The defendants urge that the order of dismissal was proper because indispensable parties were made defendants in plaintiff's original bill and such parties were, upon proper alignment, on the plaintiff's side of the litigation, and when thus realigned citizens of Illinois are on opposite sides of the controversy and diversity jurisdiction destroyed. It is also urged that this jurisdictional defect was not cured by the omission of such parties in the proposed amended complaint. Further, it is insisted that plaintiff, an alien, cannot sue citizens of more than one state.

It is apparent that the propriety of the lower court's action hinges largely upon the determination of whether certain defendants were indispensable parties. The parties named in the original bill as defendants sought to be voluntarily dismissed by plaintiff and eliminated by the amended complaint are Ruth Jacobi Young, widow of plaintiff's son, in both her individual capacity and as administratrix of her husband's estate; Lawrence Heyworth, who is also a divorced husband of Selma Cecile Young who bore him a son, Otto Young Heyworth, who died without issue and intestate; Evelyn Heyworth, widow of Otto Young Heyworth; and Lawrence Heyworth, Jr., half-brother of Otto Young Heyworth, the son of Lawrence Heyworth and his second wife. Defendant contends that these parties have exactly the same interest as plaintiff and are all indispensable.

Notwithstanding defendants' suggestion to the contrary, we think the rule as to the indispensability of parties must be determined by federal rather than local rules. See Chicago, M., St. P. & P. R. Co. v. Adams, 9 Cir., 72 F.2d 816, 818; Ford v Adkins, D.C., 39 F.Supp. 472, 474; Simon v. Shaffer, D.C., 11 F.Supp. 450.

The Supreme Court in Niles-Bement-Pond Company v. Iron Molders' Union Local No. 68 et al., 254 U.S. 77, 80, 41 S. Ct. 39, 41, 65 L.Ed. 145, said:

"There is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not; but a rule early announced and often applied by this court is sharply applicable to the case at bar. In Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, this language—quoted with approval in Barney v. Baltimore City, 6 Wall. 280, 284, 18 L.Ed. 825, and again in Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80—was used to describe parties so indispensable that a court of equity will not proceed to final decision without them, viz.:

" 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' "

We are of the opinion that the following Supreme Court cases illustrate the manner in which the rule has been applied in analogous situations. In Horn v. Lockhart, 84 U.S. 570, 17 Wall. 570, 21 L.Ed. 657, certain heirs brought an action against an administrator for an accounting. The court held that some of the heirs, whose inclusion would defeat diversity jurisdiction, could be dismissed as their interests were separable and they were not indispensable. In Payne v. Hook, 74 U.S. 425, 7 Wall. 425, 19 L.Ed. 260, one distributee of an intestate's estate sued the administrator and his surety on his bond. The court held other heirs and distributees not indispensable as the court could frame a decree to do justice to the parties before it without prejudice to the rights of the equally interested absent parties. In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80, the plaintiff, claiming to be an heir at law, brought suit against the executor of an estate to establish his interest in the estate, to set aside certain legacies and to compel the executor to pay to

plaintiff his share in the estate. The court held that an omitted heir was not an indispensable party; that the federal court could not grant all the relief prayed for but this would not defeat jurisdiction as a decree could be entered preserving the rights of the parties. See also Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861, 863; Asher v. Bone, 9 Cir., 100 F.2d 315, 318; Oxley v. Sweetland, 4 Cir., 94 F. 2d 33, 35; Seeley v. Cornell, 5 Cir., 74 F.2d 353, 355; Williams v. Crabb, 7 Cir., 117 F. 193, 204, 59 L.R.A. 425; Currier v. Currier, D.C., 1 F.R.D. 683.

We are of the opinion that the cases cited by defendants in support of their position as to the indispensability are inapplicable to the facts of this case.[2] Those cases treat of controversies involving contracts or suits for partition and none involve the construction of a will or actions against an estate.

Defendants also assert that there is another group who have not been made parties to either the amended or original complaint but who are also indispensable. We do not agree. Such parties are in no closer relationship to plaintiff or in any different position than the five above listed.

■ We, therefore, conclude under the decisions above discussed and cited that the parties mentioned are not indispensable. It follows that they were properly dismissed out of the action and that plaintiff should have been given leave to file his amended complaint.

■ We have not overlooked defendants' argument that this is a partition suit. True, the complaint does ask for a partition and division of the trust estate as part of the relief prayed for. This is but incidental, however, to the main purpose of the suit which is the construction of the will of Otto Young. The prayer for the partition may properly be treated as surplusage.

■ We now consider the contention of defendants that plaintiff, an alien, cannot sue citizens of different states in the same

2 Shields v. Barrow, 58 U.S. 130, 17 How. 130, 15 L.Ed. 158; Barney v. Baltimore City, 73 U.S. 280, 6 Wall. 280, 18 L.Ed. 825; Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; Commonwealth Trust Co. v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219.

action: In other words, their position is that an alien cannot sue citizens of more than one state. Section 24 of the Judicial Code, 28 U.S.C.A. § 41(1), provides that the district courts shall have jurisdiction of "suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, * * * $3,000 * * * or (c) is between citizens of a State and foreign States, citizens, or subjects." Defendants urge that as the statute says "citizens of a State" that means that the parties opposed to the alien must all be citizens of the same state. We do not believe this to be a reasonable construction. Such a holding would lead to harsh and unreasonable results. Such an alien would not be able to sue two joint obligors under a contract obligation merely because one happened to be a citizen of a state different from the other. Defendants have cited no case supporting their contention in this respect. Jackson v. Heiser, 9 Cir., 111 F.2d 310, 312, and Niccum v. Northern Assur. Co., D.C., 17 F.2d 160, 163, hold to the contrary. We agree with the reasoning of those decisions.

Our rulings upon the issues discussed make it unnecessary to consider other questions raised by the parties in their briefs.

The judgment of the District Court is reversed, with directions to proceed in conformity with the views herein expressed.